# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01245-SCT

*EDWIN WELSH*

*v.*

*WILLIAM M. MOUNGER, II, E. B. MARTIN, JR.,*
*MSM, INC. AND MERCURY WIRELESS*
*MANAGEMENT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/27/2002 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES R.  HUBBARD |
| | DANA E. KELLY |
| | PHILLIP J. BROOKINS |
| | JOHN LEONARD WALKER |
| | GRADY F. TOLLISON |
| | E. FARISH PERCY |
| ATTORNEYS FOR APPELLEE: | JOHN L. MAXEY |
| | GEORGE R. FAIR |
| | PAUL STEPHENSON |
| | DONNA ROSS PHILIP |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | PUBLIC REPRIMAND AND MONETARY SANCTION - 03/17/2005. |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### CONSOLIDATED WITH

## NO. 2005-CS-00538-SCT

*IN RE: DANA E. KELLY*

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This case arises from statements made by Dana E. Kelly in his motion for reconsideration of this Court's denial of his motions for the recusal of two justices made after the Court's opinion in *Welsh v. Mounger*, 883 So. 2d 46 (Miss. 2004), was handed down. The primary focus of Kelly's motions for reconsideration was upon Justice Dickinson. Kelly was ordered to appear before this Court, sitting en banc, on January 13, 2005, at which time he was offered an opportunity to further address the Court. Kelly declined to make any statement to the Court. His counsel, Rob McDuff, did address the Court. Due to Kelly's untimely filed motion for recusal, his refusal to accept responsibility for making inappropriate statements to this Court concerning Mounger being the "highest bidder" in Justice Dickinson's election campaign, and further due to his repeated false statements to this Court concerning Mounger being the "single largest individual major donor to Justice Dickinson's election campaign," even after being clearly informed by this Court that the statements were false, we find that sanctions in the amount of a $1,000 and a public reprimand are appropriate.

## FACTS

¶2.    This matter began in the Chancery Court of Hinds County where Edwin Welsh, represented by Kelly, sued various defendants, including William Mounger II. After hearing testimony of over twenty witnesses over eleven days of trial, the Chancellor entered a judgment in favor of the defendants, and against Welsh. Then, Welsh appealed to this Court, whereupon we handed down a decision in July, 2004, affirming the Chancellor. Only after this Court handed down its decision which was unfavorable to Welsh, did Kelly file a motion for the recusal of Chief Justice Smith and Justice Dickinson. In the motion, Kelly alleged that

2

"defendant Mounger was the single largest individual major donor to Justice Dickinson's election campaign."

¶3. By separate orders, both Justices denied the motions for recusal. In Justice Dickinson's order denying recusal, he pointed out that, when the case was decided on the merits, he was unaware of Mounger's contribution. He also pointed out that Kelly improperly waited over five months, until after this Court handed down its decision, before filing the motion to recuse. The order denying recusal also informed Kelly in no uncertain terms that the Certified Public Accountant for Justice Dickinson's campaign investigated Kelly's allegation that "defendant Mounger was the single largest individual major donor to Justice Dickinson's election campaign," and found it to be false.

¶4. Welsh filed a motion for reconsideration which contained the following:

> As the *Clarion Ledger* has noted, '[o]ur judicial elections have become highest-bidder exercises. It has to stop or the public will lose all faith in the system.' As the Chief Justice recently noted, '[t]rue or not, most people believe that too much money corrupts . . .'

> In this sense, one of the two Defendants in this case was the highest bidder in the election campaign of Justice Dickinson.

Our order denying the motion for reconsideration included the following language:

> attorney Dana E. Kelly is hereby ordered to show cause, within five days from the date of the Order, why he should not be sanctioned for including the language in the motion, and is further ordered to present to this Court all evidence known to him which supports his allegation that 'one of the two Defendants in this case was the highest bidder in the election campaign of Justice Dickinson.'

¶5.     Kelly filed his response, as ordered.  He presented no evidence which supported his prior statement that "one of the two Defendants in this case was the highest bidder in the election campaign of Justice Dickinson."   Instead, he insisted that the language in question "was a fair reference to documented public opinion, . . ." and further told this Court that the language "was not intended and cannot fairly be read as an accusation that a judge sold his vote." Kelly appears to feel that the matter was not even fairly debatable.

¶6.     Kelly then characterized this Court's order as "an incomplete and thus inaccurate description of the language of the motion and omits any reference to the context in which the argument is presented."   Accordingly, he urged this Court to look at the "context" and ignore the literal language ("was the highest bidder"), which was the same language in which he authored and filed with this Court.

¶7.     Kelly told this Court that the "context" is provided by a speech given by the Chief Justice of the Court, and an editorial in the *Clarion-Ledger* newspaper.  The quote from the *Clarion-Ledger* (which is cited as part of the "context") states that "[o]ur judicial elections have become highest-bidder exercises.  It has to stop or the public will lose faith in the system."  It does not say "*appears* to have become highest-bidder exercises," but instead says, "*have* become highest-bidder exercises." (emphasis added).

¶8.     Thus, Kelly insists that, not only must we ignore his literal language and read it in "context" with the *Clarion-Ledger*, but we must also accept that the *Clarion-Ledger* language does not really mean what it says and should also be read in context.   Kelly's efforts are a weak, disingenuous attempt to explain (rather than a complete and unequivocal apology for)

4

his inappropriate and unfounded accusation. There is also Kelly's repeated, false representation to this Court that "Mounger was the single largest individual contributor to Justice Dickinson's election campaign . . . ."

¶9. This allegation was first made by Kelly in the motion for recusal. After Justice Dickinson's campaign treasurer informed us that the statement was not accurate, this Court informed Kelly, expecting him to check the records of the Secretary of State and withdraw his false assertion. However, without bothering to carefully recheck the records of the Secretary of State, Kelly ignored this Court's admonition, and he repeated the false statement *three times* in his motion for reconsideration. He even underlined it to afford it emphasis. He then repeated the false allegation for a third time in his response to our show cause order. Only after we ordered him to appear before this Court did he check the records and learn that indeed his statement was not accurate. Even then, he filed nothing with this Court to retract or apologize for these false statements. Making a false statement to this Court, repeatedly in the face of the truth, quickly approaches what many trial practitioners would maintain to be willful, wanton, and gross negligent behavior.

¶10. In his submission to this Court, Kelly implied that Justice Dickinson did not respond to the issue of whether appearance of impropriety might be raised, claiming such issue was "not addressed by the September 30 order." Kelly failed to mention, however, that the issue had already been fully addressed in this Court's August 23, 2004, order denying the motion for recusal.

¶11. Many other problems exist with Kelly's submission to this Court, all of which are outlined in our previous orders. Until Kelly was ordered to appear before us on January 13, 2005, Kelly's submissions to this Court in this matter were disrespectful, disingenuous, and totally unapologetic. Kelly accused this Court of being "incomplete" and "inaccurate." He repeatedly made the inaccurate claim that "Mounger was the single largest individual contributor to Justice Dickinson's election campaign," even after being warned in this Court's previous order that the statement was false.

¶12. Kelly attempted to mislead this Court, and anyone else reading his submission, by implying in his motion for reconsideration that the issue of "appearance of impropriety" had not been addressed when, in fact, it had been addressed by this Court. Kelly informed us that this Court could not fairly read his language to say what we fairly read it to say.

¶13. Finally, after all this, Kelly informs us that he drafted the motion for reconsideration "with care." Kelly also filed a supplemental response which this Court read and reviewed. Practitioners before this Court must appreciate and ensure that documents filed with this Court do not contain disrespectful, inappropriate language.

¶14. The purpose of the January 13, 2005, sanctions hearing was to allow Kelly to make a statement to this Court, followed by questions. However, Kelly declined to make any statement to the Court, although his counsel did address the Court. Having taken the matter under advisement, en banc, we render our decision as follows.

### ANALYSIS

6

¶15. It is undisputed that this Court holds attorneys to the highest of standards. Furthermore, this is evidenced by the fact that the Board of Bar Commissioners of the Mississippi Bar has adopted the *Lawyer's Creed* which contains standards for lawyers' conduct in association with fellow professionals. A complete recitation of the applicable rules governing professional conduct would be redundant. However, we reiterate the importance of the first as well as foremost duty of attorneys which is to represent the interests of the client. Disturbingly, Kelly blatantly disregarded the standards of conduct enumerated in the *Lawyer's Creed* as well as the Mississippi Rules of Professional Conduct. Therefore, we must ask how, then, did Kelly's repeated, knowingly false comments serve first, the interests of his client to the best of Kelly's ability? We conclude they did not serve his client's interests.

¶16. We are further appalled by Kelly's selective, yet purposeful dismissal of the *four* previous statements we issued whereupon we specifically informed him that he had made false accusations in his pleadings. Attorneys are officers of the Court and as such, according to Rule 3.3 of the Mississippi Rules of Professional Conduct, are charged with displaying candor towards the tribunal. Kelly violated this mandate by *knowingly* continuing to make false statements of material fact to this Court.

¶17. Similarly, as an officer of the courts, attorneys are expected to engage in or refrain from certain actions or behaviors in order to maintain the integrity of this noble profession. Rule 8.2 of the Mississippi Rules of Professional Conduct expressly prohibits lawyers from "mak[ing] a statement that the lawyer knows to be false or with reckless disregard as to its truth

or falsity concerning the qualifications or integrity of a judge . . ." Again, Kelly repeated false accusations even after having been corrected by this Court.

¶18. Notably, the Mississippi Bar as well as Mississippi College School of Law and the University of Mississippi School of Law have taken additional measures in order to address Ethics and Professional Conduct among the Bar. Specifically, the Mississippi Bar has devoted several issues to Ethics and Professionalism in an attempt to "reign-in" behavior similar to Kelly's. More recently, both the Mississippi College School of Law and the University of Mississippi School of Law began conducting an annual Law School Professionalism Program that is presented to entering law students. Prior to the initiation of this program, courses on Ethics and Professionalism were not available until much later in the curriculum. While sponsored by the Mississippi Bar, many noted attorneys and judges participate in this program to inform entering law students of the high standards they will be held to, and also to deter them from engaging in unprofessional, unethical, and ill-advised behavior like that exhibited by Kelly.

¶19. Our response to Kelly's flagrantly disrespectful conduct occurring before this Court, shall serve as a warning to the members of the Mississippi Bar, and as such, shall conclusively clarify any misconceptions regarding the possibility of tolerance to improper conduct before this Court. While Kelly is not suspended or disbarred, we shall reference other jurisdictions that have suspended as well as disbarred attorneys that behaved similarly to Kelly.

¶20. In *United States District Court for Eastern District of Washington v. Sandlin*, 12 F.3d 861 (9th Cir. 1993), an attorney was suspended from the practice of law for six months for

8

allegedly making false statements about a trial judge, in reckless disregard for their truth. Moreover, in ***Comm. on Legal Ethics of West Virginia v. Farber***, 408 S.E.2d 274 (W. Va. 1991), a lawyer was given a three-month suspension for three separate counts of misconduct and indefinite suspension (pending proof of emotional and psychological stability) because he had a "pattern and practice" of lashing at judges with reckless accusations. The attorney misrepresented facts in a motion to disqualify a circuit judge and made allegations against that judge to a special prosecutor and again falsely accused the circuit judge of criminal acts. ***Id.*** Also, in ***Bar Ass'n of Greater Cleveland v. Carlin***, 423 N.E.2d 477 (Ohio 1981), an attorney was suspended from the practice of law for one (1) year for persistently responding to court rulings with statements of disbelief, profanity, obscenity, disparagement of the judge and other manifestations of disrespect and discourtesy.

¶21.　　The following cases are exemplary of a nation-wide judiciary that refuses to condone or even entertain conduct by attorneys that is unprofessional or unethical. In the case of ***In re Evans***, 801 F.2d 703 (4th Cir. 1986), a lawyer was disbarred from the practice of law for reasserting charges against a judge, without investigating. The Court stated that the "failure to investigate, coupled with his unrelenting reassertion of the charges . . . convincingly demonstrates his lack of integrity and fitness to practice law." ***Id.*** at 706. Also, in the case of ***In re Palmisano***, 70 F.3d 483 (7th Cir. 1995), which was a reciprocal discipline case where Palmisano was disbarred in Illinois for making blameless accusations of crime and lesser

wrongs against judges, the federal judiciary asserted that they "are no more willing to tolerate repeated, false, malicious accusations of judicial dishonesty than are state courts."

¶22.    Likewise, in *People ex. rel. Chicago Bar Ass'n v. Metzen*, 125 N.E. 734 (Ill 1919), the court disbarred an attorney who brought suit against a trial judge for damages on account of his ruling and prepared newspaper articles gaining publicity for his suit.   When a lawyer repeatedly made grossly disrespectful allegations against a judge, he was subsequently disbarred from the practice of law.  *In re Whiteside*, 386 F.2d 805 (2d Cir. 1967).   Finally, in *State ex rel. Nebraska State Bar Ass'n v. Michaelis*, 316 N.W.2d 46 (Neb. 1982), an attorney was disbarred when, while at a hearing on charges of making unfounded allegations against judges, continued his attacks, and also attacked the deciding court just prior to its decision.   In the case at bar, Kelly should have timely filed his motion *before* Justice Dickinson voted on the merits of the case, he should have supported his motion with evidence in the record, and he should have presented us with legal authority, rather than a newspaper editorial and a speech given by the Chief Justice.   All attorneys are required to comply with these restrictions and requirements.  So must Kelly.

### CONCLUSION

¶23.    For the aforementioned reasons, this Court concludes that Kelly's behavior is unacceptable and sanctionable. This is not an issue of free speech as attorneys are required to abide by higher ethical standards of conduct and give up what normally would be considered free speech to the public at large while appearing in Court or filing documents with the Court. Zealous advocacy does not include blatant disregard or outright disrespect to the judiciary and,

10

accordingly, will not be tolerated. Our judicial system can not properly function when lawyers demonstrate a pervasive lack of respect for judges, justices and the courts. Lawyers are thus required to show respect for the position of judge and for the institution. Due to Kelly's inability to fully accept responsibility for making false and disrespectful accusations, his repeated false statements to the Court, and his untimely motion to recuse we find that sanctions in the amount of a $1,000, and a public reprimand are appropriate.

¶24. **DANA E. KELLY SHALL APPEAR BEFORE THIS COURT, IN OPEN COURT, ON MAY 10, 2005, AT 9:30 A.M. TO RECEIVE A PUBLIC REPRIMAND AND SHALL PAY SANCTIONS IN THE SUM OF $1,000 TO THE CLERK OF THIS COURT WITHIN THIRTY (30) DAYS OF THE DATE OF THIS OPINION.**

**COBB, P.J., EASLEY, CARLSON, AND DICKINSON, JJ., CONCUR. WALLER, P.J., DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**

11