# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01413-SCT

*CITY OF JACKSON, MISSISSIPPI AND UNIVERSITY OF MISSISSIPPI MEDICAL CENTER*

*v.*

*THE ESTATE OF OTHA STEWART, DECEASED, BY AND THROUGH ITS ADMINISTRATOR, EMMA WOMACK*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2003 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHARON DIANE GIPSON |
| | PIETER JOHN TEEUWISSEN |
| | LANNY R. PACE |
| | CORRIE SCHULER |
| ATTORNEYS FOR APPELLEE: | JAMES A. BOBO |
| | MARK C. BAKER |
| | BERNARD C. JONES |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | MOTION FOR REHEARING STRICKEN FROM THE FILES - 12/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 1999-IA-01527-SCT

*OTHA STEWART, BY AND THROUGH EMMA WOMACK, HER DAUGHTER AND CONSERVATOR OF HER PERSON AND HER ESTATE*

*v.*

*CITY OF JACKSON, MISSISSIPPI, AND DORIS B.*
*SPILLER*

DATE OF JUDGMENT:              09/01/1999
TRIAL JUDGE:                   JAMES E. GRAVES, JR.
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       JAMES A. BOBO
                               MARK C. BAKER
ATTORNEYS FOR APPELLEE:        DARLA Y. MANNERY-PALMER
                               PATRICIA K. SIMPSON
                               MICHAEL JEFFREY WOLF
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                   MOTION FOR REHEARING STRICKEN FROM
                               THE FILES - 12/15/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


CONSOLIDATED WITH
NO. 2005-CS-02169-SCT

*IN RE: JAMES A. BOBO AND MARK C. BAKER*


**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    We are, regrettably, again confronted with disrespectful language which members of

the Mississippi Bar have knowingly, consciously, and intentionally chosen to place in a motion

for rehearing which was previously filed in this cause.   Finding the lawyers' conduct to be

unprofessional and rising to the level of incivility, we direct that the motion for rehearing be

stricken from the files.

**FACTS AND PROCEEDINGS**

¶2.    On August 11, 1997, Mrs. Otha Stewart fell after exiting a van operated by the City of

Jackson, as she prepared to enter a day care center operated by the University of Mississippi

Medical Center. Approximately one year later, suit was commenced by Mrs. Stewart against the City, the Hospital, and Doris Spiller, the individual van driver, for injuries received in the fall. A conservatorship was later established for Mrs. Stewart, whose daughter, Emma Womack, was substituted as the party plaintiff in her official capacity as conservator of Mrs. Stewart's estate. The defendants subsequently filed motions for summary judgment, and in due course, the trial court denied the Hospital's summary judgment motion, but granted summary judgment in favor of the City and Spiller. Via an interlocutory appeal, this Court reversed the trial court's grant of summary judgment in favor of the City and Spiller. *Stewart ex. rel. Womack v. City of Jackson,* 804 So.2d 1041 (Miss. 2002).

¶3. Upon remand, the trial court conducted a bench trial pursuant to Miss. Code Ann. §§ 11-46-1, et seq. [commonly referred to as the Mississippi Tort Claims Act (MTCA)]. After the bench trial, the trial court found that the City and the Hospital were liable and awarded the plaintiff the total amount of $1,000,000 as damages against the City and the Hospital under tort and breach of contract theories.[1]

¶4. From this final judgment, both the City and the Hospital appealed to us. On May 12, 2005, we handed down our opinion which affirmed the trial court's judgment as to a finding of liability against the City, but we remanded the case to the trial court for a new trial as to damages only against the City, with instructions to limit any award against the City to an amount not to exceed $250,000, pursuant to the MTCA. As to the trial court judgment against the Hospital, we reversed and rendered. *City of Jackson v. Estate of Stewart ex rel. Womack*,

---

[1]Shortly after the trial of this case, and prior to the trial court's entry of its opinion and final judgment, Mrs. Stewart died, and thus her estate was substituted as plaintiff.

(Miss. May 12, 2005). Thereafter, the Estate, through counsel, filed a motion for rehearing. On August 4, 2005, we denied the motion for rehearing, but modified the original opinion. *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So.2d 703 (Miss. 2005).

¶5. However, the events surrounding the filing of the motion for rehearing are the focus of today's case. After our initial opinion in this case was handed down on May 12, 2005, the Estate, through attorneys James A. Bobo and Mark C. Baker, Sr., signed and caused to be filed a motion for rehearing on May 26, 2005. We recite the language used in this motion for rehearing which precipitated certain events subsequent to the filing of the motion for rehearing (M/R):

> (1) On page 1 of the M/R – "The vast majority of opinions issued by this August Body exemplify the virtues of scholarship, intellectual honesty, neutrality, balance, justice and fair play. Win or lose the facts and law of the case are fairly stated. Unlike those opinions, the opinion in this case does not meet these standards. The opinion does a disservice to the Court and the parties and almost certainly will cause confusion and uncertainty among the bench and bar."

> (2) On page 1 of the M/R – "The opinion issued in this case does not accurately set forth the facts of this case." [An accompanying footnote states "How is it that an opinion discussing this case could not mention the 'smoking gun' memorandum where Jackson admits that it was endangering the elderly and infirm through its failure to meet the express conditions of the CMPDD contract?"] "The injustice wrought by the opinion is perhaps best exemplified by the opinion's adoption of the testimony of Dr. Thiel."

> (3) On page 2 of the M/R – "**It bears repeating: the lone medical opinion stating there was no stroke event is used by the author of the opinion to justify exclusion of damages caused by the stroke.** This reasoning defies logic." (Emphasis in original).

> (4) On page 2 of the M/R – "In an unscholarly fashion the opinion appears to overturn long established principles of law concerning foreseeability and appellate review. It can be fairly stated that the opinion does violence to the 'letter [and] the spirit of' the Law." (Citation omitted).

4

(5) On pages 6-7 of the M/R – "The opinion, without a single citation to authority, legislates a limit on contract damage claims against governmental entities in express contract cases (¶ 41 of Opinion). The Mississippi Legislature has not imposed such a limit, yet to achieve the outcome desired the opinion moves the Court from jurists to legislators."

(6) On page 7 of the M/R – "The straw argument of implied contract claims is propped up and knocked down for reasons having nothing to do with the law or the facts of this case. Abandoning balance and neutrality and the long established principles which apply when reviewing a Trial Court's decision concerning breach of an express contract, the opinion advocates on behalf of the defendants."

(7) On page 8 of the M/R – "¶ 9 of the Opinion adopts a version of events favorable to the Defendants."

(8) On page 10 of the M/R – "The opinion also ignores the concept that the UMMC contract provisions concerning transportation, coordination and continuity of service place a duty in tort upon UMMC to continue to protect Mrs. Stewart as they had in the past. Footnote 3 of the opinion sets forth a weak side-stepping of this issue."

(9) On page 10 of the M/R – "¶ 39-40 [of the opinion] address another non-issue. Mrs. Stewart put on proof of economic damages in excess of $1,000,000.00. Her incurred medicals to date of trial were $416,000.00, with future medicals of $1.3 Million. The judgment is for $1 Million. It is silly [for this Court] to contend that there was any double recovery."

(10) On page 11 of the M/R – "The opinion incorrectly applies the cases cited in ¶¶ 43-46 [here is inserted footnote no. 16] and through selective citation fails to mention or reference the controlling principles of law." [In the referenced footnote no. 16, there appears this language: "The citation to **Smith v. United States**, 284 F.Supp. 259 (SD Miss. 1967) aff'd per curiam, 394 F.2d 482 (5th Cir. 1968) should be a dead give away of the feeble cobbling and machinations needed to prop up the conclusion that duty and proximate cause were not established."]

(11) On page 12 of the M/R – "The more important factor is that it is only by selecting discreet passages that the opinion is able to prop up its foreseeability conclusion. A balanced and fair reading of the record reflects that Dr. Ramsey testified that the fall caused the stroke and resulting deterioration of Mrs. Stewart's death."

(12) On page 13 of the M/R, the Conclusion states: "This Motion for Rehearing should be granted and the decision of the Trial Court upheld in all respects. However, if Mrs. Stewart must lose and her ill treatment and suffering be without recompense then there is little she can do to change it. But she should not lose like this. Not by an opinion which ignores and twist (sic) the facts. Not by an opinion that contorts the law to achieve a certain outcome more in tune with a political philosophy. Instead, if it must be, then do it with honest scholarship and legal craftsmanship which addresses the real issues of the case. Mrs. Stewart and the people of Mississippi deserve at least that."

¶6. On August 4, 2005, this Court entered an en banc order reciting these examples of disrespectful language contained in the motion for rehearing, and (1) directing Bobo and Baker to file written responses to our show cause order and (2) directing Bobo and Baker to appear before this Court, sitting en banc, on October 13, 2005, to show cause as to why they should not be sanctioned. On August 23, 2005, and August 24, 2005, Baker and Bobo, respectively, filed written responses to our show cause order. In his response, Baker, inter alia, "unequivocally apologize[d]" to the Court for his part in causing the language to appear in the motion for rehearing. On the other hand, Bobo, while placing language in his response indicating respect for this Court as an institution, and the individual members currently on the Court, stated, inter alia, that he "gauged the skin of the Court to be thicker and its temperament broad enough to allow unfettered the free flow of ideas." Bobo likewise found Rule 40(c) of the Mississippi Rules of Appellate Procedure to be "standardless" and at odds with the First and Fourteenth Amendments of the United States Constitution as well as with Art. 3, §§ 11, 14 & 24, of our state constitution. In essence, Bobo deemed it his constitutional right to place the language in the motion for rehearing. Bobo even expressed being at a total loss as to what this Court found to be disrespectful in his motion for rehearing. Bobo then addressed, point-

6

by-point, the twelve instances of disrespectful language we found to be contained in the motion for rehearing. Finally, in his response, Bobo stated:

> Words can not express how badly I wish to be reconciled with the Court. It pains me deeply to be at odds with the Court or any of its members. I have done little else since receiving the Show Cause Order than consider and weigh the matter and examine myself as a person, an attorney and Officer of the Court. I assure you that in the future, I will strive to make arguments that persuade and not offend. However, in this case I can not retreat and in candor I must say that I intend to stand and write against any wrong and injustice it might be my honor to attempt to set right.[2]

¶7.    On October 13, 2005, Bobo and Baker, as directed, appeared before the Court for the show cause hearing. Baker appeared along with counsel, and Bobo appeared, pro se. Baker, through counsel, expressed remorse and apologized to the Court. It was obvious from observing Baker's demeanor at the show cause hearing that his remorse was genuine. Bobo, to his credit, took the blame for the necessity of a show cause hearing and stated that but for his (Bobo's) actions, Baker would not be before the Court. In other words, Bobo took full responsibility for the language which appeared in the motion for rehearing. While there is no doubt that what Bobo said, and how he said it, (his demeanor) exhibited great respect for the Court as an institution (as well as the Court's current members), Bobo fervently stood by his position that he had a constitutional right to write what he did in the motion for rehearing. During his argument before the Court, Bobo, inter alia, also referred us to instances where this Court, and other courts, via its opinions (and especially individual dissenting opinions by justices), have been critical of fellow justices' interpretation of law and application of facts.

---

[2]These statements lead us to conclude that if Bobo felt moved in future cases to again "set right" a perceived wrong or injustice, he would not "retreat" and would again conduct himself in a fashion similar to that in today's case.

7

Likewise, Bobo asserted that in viewing his actions, we should keep in mind that motions for rehearing filed with this Court are not widely distributed or read by the general public.

¶8.     At the conclusion of the show cause hearing, we took this matter under advisement for further consideration and entry of an opinion.

## DISCUSSION

¶9.     In discussing the culpability of litigants in cases which we decide, it is hardly uncommon that multiple litigants will be found to have varying degrees of culpability. This is certainly true in today's case. We now know that Bobo was mainly involved in drafting the motion for rehearing and that Baker may have done little more than "sign off" on the motion for rehearing. However, as lawyers and judges know, such action on the part of a lawyer does not necessarily exonerate the lawyer from being responsible for the contents of pleadings. *See* Miss. R. Civ. P. 11.

¶10.    Based on certain language contained in Bobo's response to our show cause order, we start our discussion with the clear statement that judges, by the very nature of the adversarial system of justice in which they are involved on a daily basis, are, for the most part, "thick-skinned." There are no doubt exceptions. Certainly, at the trial level, lawyers (and judges), in the heat of battle, will say or do things, which upon reflection, they know to have been at the very least, imprudent. Thus, what might otherwise be deemed to be unacceptable, improper, or even sanctionable behavior on the part of a lawyer will be simply ignored, or at the very most, quickly disposed of by the trial judge with no more than an admonishment. While it is wise for appellate judges to likewise be "thick-skinned" and quite often accept certain behavior as no more than appropriate advocacy, appellate advocacy is still somewhat different. The

8

language which lawyers place in a brief, or a motion for rehearing, is placed there only after at least a minimum amount of thought and reflection. Assuming, *arguendo*, that a lawyer then re-reads and re-thinks what the lawyer has placed in the brief or motion, there is time for reflection on whether the language conveys the message which the writer wishes to convey, or whether, upon reflection, there is perhaps a better or more effective way of conveying the intended message. M.R.A.P. 40(c) states:

> **(c) Disrespectful Language Stricken.** Any motion for rehearing containing language showing disrespect or contempt for either appellate court will be stricken, and the appropriate court will take such further action as it may deem proper.

¶11. Notwithstanding the provisions of this Rule, the motion for rehearing signed by Bobo and Baker contained numerous instances of disrespectful language which we have already conveyed, supra. Our concern over this conduct has nothing to do with this Court or its justices being "thin-skinned" or unwilling to accept criticism. Indeed, the very purpose of a motion for rehearing is for the aggrieved party to call to the attention of this Court the point(s) of law and/or fact which this Court may have overlooked or misapprehended in its original opinion. If our system of justice at the appellate level were perfect, M.R.A.P. 40 would be unnecessary. Likewise, if our system of justice were perfect at the trial level, there would be no need for the existence of rules governing appeals. By our enforcing M.R.A.P. 40(c), it has nothing to do with the individual pride of the members of this Court, but instead, it has everything to do with preserving the integrity of this Court as an institution – those members of this Court who preceded us, *did*, and those who follow us, *should*.

¶12. Indeed, this Court in years past, long before any of the current members arrived at the Court, unhesitatingly responded to lawyer conduct similar to that exhibited by the lawyers in today's case. More than fifty years ago, Justice Gillespie, writing for a unanimous court, stated:

> While we have considered the suggestion of error on the merits, we order the brief thereon stricken from the files for the reason that it contains language showing disrespect for this Court. Language such as that used by the attorney in his suggestion of error and brief serve no purpose; it is of no aid to the Court and of no service to the clients in whose behalf it is used. This opinion is written for the purpose of admonishing counsel, and any others similarly disposed, to refrain from the use of language showing contempt or disrespect for the Courts. Attorneys perform an important and indispensable service in administering the laws. The duties of the court and the bar complement each other; neither can properly function without the other; and mutual respect is demanded by law and tradition. It is inherently within the power of the Court to enforce reasonable rules against disrespectful and contemptuous language directed to the Court, and we would be remiss in our obligation to the judicial department as an institution of government if we should ignore a violation of such rules.
>
> Any suggestion of error containing language showing disrespect or contempt for this Court will be stricken from the files, and the Court will take such further action relative thereto as it may deem proper.' Rule 14, Revised Rules of the Supreme Court of Mississippi, 1953.
>
> What we have said is not to be construed to mean that attorneys may not criticize a decision of the Court. Anyone has a perfect right to criticize, but it must be done within the bounds of propriety.

*Guynn v. Shulters*, 223 Miss. 232, 262, 78 So.2d 793, 793-94 (1955).

¶13. More than seventy-six years ago, Justice Griffith, writing for a unanimous court, stated:

> Almost every day suggestions of error are coming in here in which it is quite freely asserted, in effect, that we have not read the record, or that we have not read it as to vital features therein, or that in effect we are denying to parties their rights under the law by inattention to our tasks, or, as was ventured in the instant suggestion of error, that if we persisted in our error "then the right to contract

10

in this state will be denied by the solemn judgment of this Court." We gladly, sometimes gratefully, receive suggestions of error-some of them are indispensably helpful. Nor do we expect at all that counsel shall come apologetically in the discharge of this important function, but boldly and manfully, we wish to see him stand up and labor with us when done in a respectful manner and when counsel has so thoroughly studied the complete record of his case, and the authorities applicable thereto, that he can be a help to the law, not a hindrance to us by wasting our time. In presenting a suggestion of error the partisanship of the advocate should to a degree be laid aside, and counsel should rise to the heights of a real master and minister in the law, for the time has then come when we are to consider finally what is to go into the books, rather than chiefly the mere result of a case.

*Provident Life & Acc. Ins. Co. v. Jemison*, 153 Miss. 60, 120 So. 836, 836-37 (1929).

¶14.    So, more than seven decades after Justice Griffith penned these words for the Court, unfortunately, the current Court continues to deal with similar lawyer conduct (or misconduct). We recently had to address the conduct of lawyers at the trial level during the discovery phase of a civil case.   While admittedly not factually similar to the facts in today's case, there is certain language in that case which still quite appropriately guides us in today's case:

> We acknowledge that in recent years, the Mississippi Bar has devoted entire issues of its official publication, *The Mississippi Lawyer,* to the timely issues of ethics, civility and professionalism amongst members of the Bar. This Court has also recently had occasion to address these issues.

>> Notably, the Mississippi Bar as well as Mississippi College School of Law and the University of Mississippi School of Law have taken additional measures in order to address Ethics and Professional Conduct among the Bar. Specifically, the Mississippi Bar has devoted several issues to Ethics and Professionalism in an attempt to "reign-in" behavior similar to Kelly's. More recently, both the Mississippi College School of Law and the University of Mississippi School of Law began conducting an annual Law School Professionalism Program that is presented to entering law students. Prior to the initiation of this program, courses on Ethics and Professionalism were not available until much later in the curriculum. While sponsored by the Mississippi Bar, many noted attorneys and judges participate

11

in this program to inform entering law students of the high standards they will be held to and also to deter them from engaging in unprofessional, unethical and ill-advised behavior like that exhibited by Kelly.[3]

*In re Kelly*, --- So.2d ----, ----, 2005 WL 613407, *4 ¶ 18 (Miss. March 17, 2005).

*Mississippi Farm Bureau Mut. Ins. Co. v. Parker*, 2005 WL 1662812, ** 4-5 ¶ 13 (Miss. 2005).

¶15.    In another recent case, we addressed the inappropriateness of language placed in a post-decision motion filed with this Court.  After the opinion was handed down by this Court, the aggrieved party, through counsel, filed a motion for recusal of certain justices, and upon a denial of this motion, the party's counsel filed a motion for reconsideration.  In addressing the language found in the motion for reconsideration, we stated:

> It is undisputed that this Court holds attorneys to the highest of standards. Furthermore, this is evidenced by the fact that the Board of Bar Commissioners of the Mississippi Bar has adopted the *Lawyer's Creed* which contains standards for lawyers' conduct in association with fellow professionals. A complete recitation of the applicable rules governing professional conduct would be redundant. However, we reiterate the importance of the first as well as foremost duty of attorneys which is to represent the interests of the client. Disturbingly, Kelly blatantly disregarded the standards of conduct enumerated in the *Lawyer's Creed* as well as the Mississippi Rules of Professional Conduct.
>
> *************
>
> Our response to Kelly's flagrantly disrespectful conduct occurring before this Court, shall serve as a warning to the members of the Mississippi Bar, and as such, shall conclusively clarify any misconceptions regarding the possibility of tolerance to improper conduct before this Court.[4]

---

[3]We wish to make it abundantly clear that we address the conduct of the lawyers in today's case only from the standpoint of civility and professionalism.  We do not address today's case from the standpoint of ethical behavior by way of potential violations of the Mississippi Rules of Professional Conduct.

[4]What is appalling to this Court is that when Bobo and Baker filed the motion for rehearing containing the disrespectful language on May 26, 2005, they had the benefit of our

************

> For the aforementioned reasons, this Court concludes that Kelly's behavior is unacceptable and sanctionable. This is not an issue of free speech as attorneys are required to abide by higher ethical standards of conduct and give up what normally would be considered free speech to the public at large while appearing in Court or filing documents with the Court. Zealous advocacy does not include blatant disregard or outright disrespect to the judiciary and, accordingly, will not be tolerated. Our judicial system can not properly function when lawyers demonstrate a pervasive lack of respect for judges, justices and the courts. Lawyers are thus required to show respect for the position of judge and for the institution.

***Welsh v. Mounger (In Re Kelly)***, 912 So.2d 823, 826-28 (Miss. 2005).

¶16.    One of the cornerstones of the legal profession has always been that our profession is one of service to our citizenry, and that the citizens have a right to expect of their lawyers exemplary conduct which might be deemed burdensome when viewed by the lay (non-lawyer) citizens of society.    Attorneys should accept, without reservation, the requirement that they be held to higher standards of conduct and "give up what normally would be considered free speech to the public at large while appearing in Court or filing documents with the Court." ***Id.*** at 828.    Today, we again embrace this explicit tenet which should be unhesitatingly followed by lawyers on a daily basis.    As we stated in ***Welsh***, today's case is not about constitutional free speech, but it is instead about what the judiciary of this state has a right to minimally expect by way of the conduct of the lawyers who appear before our courts as officers of the court.  ***Id.  See also Miss. Bar v. Lumumba*** , 912 So. 2d 871, 883-86 ¶¶ 26-28, 33 (Miss. 2005).    Zealous and effective advocacy is desirable, but it can certainly be accomplished

---

warning in ***Kelly*** which was issued via the opinion handed down on March 17, 2005, more than two months earlier.

13

without rude, offensive and demeaning language directed toward the court, counsel and/or party.

¶17.    As we stated in *Parker*, lawyers are bound by the "well-familiar but perhaps all-too-often forgotten Lawyer's Creed," which states, in pertinent part:

> 1) I revere the Law, the System, and the Profession, and I pledge that in my private and professional life, and in my dealings with fellow members of the Bar, I will uphold the dignity and respect of each in my behavior toward others.
> 2) In all dealings with fellow members of the Bar, I will be guided by a fundamental sense of integrity and fair play; Effective advocacy does not mean that any tactic is acceptable.
> \*\*\*\*\*\*\*\*\*\*\*\*
> 7) I recognize that my conduct is not governed solely by the Code of Professional Responsibility, but also by standards of fundamental decency.
> \*\*\*\*\*\*\*\*\*\*\*\*
> 10) I recognize that effective advocacy does not require antagonistic or obnoxious behavior, and as a member of the Bar, I pledge to adhere to the higher standard of conduct which we, our clients, and the public may rightfully respect.

2005 WL 1662812, * 4, ¶ 12.    We find that the lawyers in today's case unquestionably failed to adhere to these important tenets which are a vital part of the Lawyer's Creed.

¶18.    In sum, lawyers who assert that they are but appropriately representing their clients in a zealous manner by filing with this Court a motion containing language similar to that contained in the motion for rehearing previously filed in this case, should be prepared to accept the consequences of their actions.  It is a disservice to their clients for lawyers to file any motion with this Court containing such language.  The conduct of the lawyers in today's case is unprofessional and amounts to incivility.  Thus, consistent with the provisions of M.R.A.P. 40(c), we hereby direct that the motion for rehearing be stricken from the files.

## CONCLUSION

14

¶19. We will always zealously protect this Court as an institution, and when this Court is attacked in a written document filed with this Court by accusing this Court of "abandoning balance and neutrality" and legislating from the bench by issuing an opinion which is, inter alia, unscholarly, illogical, silly, and politically motivated, we will swiftly respond by taking appropriate action against the responsible party/lawyer(s). The statements contained in the motion for rehearing were premeditated and insulting to this Court, as an institution, and they cannot and will not go unnoticed by this Court. The lawyers in today's case are very capable and experienced lawyers, whose allegiance to their client is beyond question. On the other hand, in looking at their conduct exhibited in this case, they certainly knew better. Their conduct cannot be condoned or excused because of petulance or under the guise of zealous advocacy. Lawyers who might in the future be of the opinion that they can exhibit with impunity conduct similar to that exhibited by the lawyers in today's case, all under the guise of zealous advocacy, are woefully mistaken.

¶20. For the reasons stated, the motion for rehearing shall be stricken from the files, pursuant to the provisions of M.R.A.P. 40(c).

¶21. **MOTION FOR REHEARING STRICKEN FROM THE FILES.**

**WALLER AND COBB, P.JJ., EASLEY AND RANDOLPH, JJ., CONCUR. SMITH, C.J., DIAZ, GRAVES AND DICKINSON, JJ., NOT PARTICIPATING.**