# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-01104-COA

**VETO F. ROLEY**                                                                    **APPELLANT**

**v.**

**CHINELO J. ROLEY**                                                                    **APPELLEE**

DATE OF JUDGMENT:              09/23/2022
TRIAL JUDGE:                  HON. MARK ANTHONY MAPLES
COURT FROM WHICH APPEALED:     JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        VETO F. ROLEY (PRO SE)
ATTORNEY FOR APPELLEE:         CHINELO J. ROLEY (PRO SE)
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 06/11/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     Over six years ago, the Jackson County Chancery Court granted a divorce to Chinelo Roley from Veto Roley on the basis of habitual cruel and inhuman treatment. *See generally Roley v. Roley*, 329 So. 3d 473 (Miss. Ct. App. 2021). Over three years ago, after Veto appealed, we unanimously affirmed the trial court's grant of divorce in a wide-ranging 51-page opinion. *Id.*

¶2.     The opinion necessitated such length because Veto, acting pro se, raised a dozen issues. These ranged from the mundane to the Byzantine, such as that Veto should have been allowed to proceed in forma pauperis because he believed a claim of habitual cruel and inhuman treatment in a domestic action was "a quasi-criminal charge," that the statute allowing a chancellor to consider the preference of a child age 12 or older in a custody

dispute was "a violation of the U.S. Constitution First Amendment," and that the Mississippi Electronic Courts system was "fundamentally unfair" as he was not an attorney.

¶3. We denied Veto's motion for rehearing, and on December 13, 2021, the Mississippi Supreme Court denied his petition for certiorari review. The order detailed that "ALL JUSTICES" had voted "TO DENY" the petition.

¶4. Undeterred, Veto then filed what he styled as a "Rule 60(B)(1)(5)(6) MOTION FOR RELIEF FROM THE DIVORCE ORDER" back in the Chancery Court of Jackson County. *See* MRCP 60. Despite the unanimous opinion from our Court affirming the lower court's grant of divorce, Veto demanded the trial court "vacate the divorce decree, or, in the alternative, call for a new trial[.]"

¶5. The trial court disposed of this request without fanfare, "interpret[ing] this Motion as a request for relief from the February 12, 2018 and July 3, 2019 prior Judgments of this Court." "Following the entry of those two Chancery Court Orders, Veto undertook an appeal," and "[t]he Court of Appeals affirmed the Judgment of the Chancery Court on all matters." As "[t]he Mississippi Supreme Court denied certiorari to Veto," triggering the mandate rule, the trial court found "[t]he Orders of this Court are now final Orders," and denied relief. The trial court also subsequently denied a motion to reconsider the denial of this motion to reconsider.[1]

---

[1] The trial court next ruled on a motion for contempt against Veto, and held he "has failed to pay child support from and after the imposition of child support in July [of] 2019." "Veto is in arrears in the amount of $8,750.00," the trial court found, and had "not paid *any* money to Chinelo Roley for the support and maintenance of the two minor children, presently ages 14 and 10." (Emphasis added). The trial court found Veto admitted his failure to comply with the court order but was not working at his capacity as "an able-bodied

¶6. Veto appealed from this ruling. In his corrected principal brief,[2] Veto challenges the trial court's ruling in a series of assignments of error, which he has variously numbered as either 12 or 15 separate arguments. The end number does not matter, as the majority of Veto's claims for relief are simply attempts to evade the mandate from this Court. Because the trial court lacked jurisdiction to entertain Veto's attacks on the prior orders of the chancery court once they were upheld on appeal, and the contempt order was supported by substantial evidence, we affirm.

* * * * *

¶7. Last year the Mississippi Supreme Court rejected a similar attempt from a litigant who was attempting to evade a prior decision. *Scruggs v. Farmland Mut. Ins. Co.*, 359 So. 3d 1045 (Miss. 2023). In 2004, the Court determined a liability insurer "had no duty to defend [a seed supplier] in a federal lawsuit by Monsanto Company" because the company "had alleged that [its insured] committed the intentional act of conversion by saving and using unlicensed seeds." *Id*. at 1046 (¶1).

¶8. But the coverage decision didn't end the lawsuit, and "in 2012, Scruggs scored a victory in federal court," which ultimately determined he had not "willfully violated Monsanto's patents." *Id*. "With this federal ruling of no willfulness in hand, Scruggs

---

man," and had presented "no evidence" that he could not work. In a separate order, the trial court ordered Veto incarcerated for his failure to pay child support.

[2] Veto's original brief was struck on sua sponte motion by this Court as it failed to comply with the Rules of Appellate Procedure's page-length and typeface requirements. *See* MRAP 28(h) (determining that "[e]xcept by permission of the court," the substantive portion of "principal briefs shall not exceed 50 pages"); MRAP 32(a) (requiring that "the text in the body of briefs shall appear in at least 12 point type").

returned to state court" the following year, and "[c]iting Rule 60(b) of the Mississippi Rules of Civil Procedure, Scruggs asked the Lee County Circuit Court to reopen and vacate the final judgment entered in 2004 in favor of Farmland on the coverage issue." *Id*. at (¶2). "Scruggs asserted this Court's opinion had been erroneously decided based on facts that came to light" during the federal proceedings. *Id*.

¶9.     A unanimous Mississippi Supreme Court utterly rejected this attempt. "Simply put, Rule 60(b) is not a procedural vehicle for a *trial court* to overturn a mandate issued from *this Court*." *Id*. at 1046 (¶3) (emphasis by the Supreme Court). Indeed, "Trial courts lack jurisdiction to entertain such requests," which the appellate courts can "take notice of sua sponte." *Id*.

¶10.    While the farmer had presented the Rule 60(b) motion to the trial court, "the judgment Scruggs sought to alter came from *this Court*," the Mississippi Supreme Court determined, and "[b]y asking the circuit court to grant relief from this Court's decree, by means of a Rule 60(b) motion, Scruggs was really requesting the circuit court violate the mandate rule." *Id*. at 1046 (¶4) (emphasis by the Supreme Court).

¶11.    This was impossible to do because "in American courts, following an appellate decision, the mandate rule applies." *Id*. at (¶5). Once "a case has been decided by an appellate court on appeal, whatever was before the appellate court, and disposed of by its decree, is considered as finally settled." *Id*. "Thus, the mandate rule stands as a jurisdictional bar on the inferior court's authority to reconsider issues that were *expressly or impliedly* decided in a previous appeal." *Id*. (emphasis added) (internal quotation mark

4

omitted).

¶12.   The Supreme Court pointed out that its prior opinion did not remand any issues and was a final decision. *Id*. at 1047 (¶7). "Once the final decree had been entered by this court, the cause was at an end," the Court reasoned, "[a]nd the circuit court could grant no relief on the coverage question." *Id*. In the end, the Court ruled that "[b]ecause the circuit court lacked jurisdiction to grant Scruggs's Rule 60(b) motion based on the mandate rule, we affirm." *Id*. at 1047 (¶8.)

¶13.   The mandate is inflexible and unavoidable. "The mandate is an order of this Court which must be followed without deviation." *Griner v. Griner*, 282 So. 3d 1243, 1247 (¶12) (Miss. Ct. App. 2019). "Coupled with the opinion, the mandate is how we communicate with trial courts." *Id.* "There is no discretion whether to follow a mandate, because the execution of the mandate of this Court is purely ministerial." *Id.* Accordingly, we have pointed out that our "Supreme Court has ruled that any order which is contrary to the mandate is actually outside the jurisdiction of a trial court, and will be held 'a nullity and void ab initio.'" *Id*. (quoting *Denton v. Maples*, 394 So. 2d 895, 897 (Miss. 1981)).

¶14.   Veto's attempt to relitigate our affirmance of the trial court's grant of divorce is the core point of his current appeal. Indeed, he has filed a motion to take judicial notice of the entire record from the prior divorce case. We deny the motion, as we have no need to turn to the prior record to resolve this appeal. The threshold legal issue we must resolve is whether Veto is attempting to evade the mandate rule articulated in *Scruggs* and *Griner.*

¶15.   We hold that the mandate rule bars reconsideration of the majority of assignments of

5

error Veto raises in this appeal. Therefore the trial court was correct to refuse to entertain Veto's efforts to relitigate those issues—the mandate stood "as a jurisdictional bar on the inferior court's authority to reconsider issues that were *expressly or impliedly* decided in a previous appeal." *Scruggs*, 359 So. 3d at 1046 (¶5) (emphasis added). Just as in *Scruggs*, the trial court here was without authority to reconsider the grant of divorce on the basis of habitual cruel and inhuman treatment once the mandate had issued from this Court.

¶16. Many of the issues Veto now raises were exhaustively dealt with in our 2021 opinion in *Roley*, either expressly or impliedly. Veto repeatedly asked the trial court and this Court to revisit the 2021 opinion, attempting to relitigate the now six-year-old divorce on the ground of habitual cruel and inhuman treatment. In some instances he is explicitly renewing his attack on what he perceives as injustices in the court system, as in the claim that he should be allowed to proceed in forma pauperis or that he is hampered by not being a part of the MEC system. But these claims and any derivation of them were expressly considered and rejected in this Court's prior decision. *Roley*, 329 So. 3d at 504, 507 (¶¶97, 110).

¶17. Not all his arguments are barred by the mandate rule. Veto raises three issues contesting the trial court's findings that he was in contempt for failure to pay child support, including his resulting incarceration. Veto's first argument is that the contempt is invalid because he thinks the divorce order should be declared void. As set out above, the divorce order was upheld in all respects and is binding and conclusive, so we find no merit to this argument.

¶18. Second, Veto argues he should not have been held in contempt because Chinelo had

"unclean hands," and he otherwise contests the factual finding by the trial court. "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis," and "[a] chancellor has substantial discretion in deciding contempt matters because of the chancellor's 'temporal and visual proximity' to the litigants." *Gilliland v. Gilliland*, 984 So. 2d 364, 369-70 (¶19) (Miss. Ct. App. 2008) (quoting *Mabus v. Mabus*, 910 So. 2d 486, 491(¶20) (Miss. 2005)). The trial court made a factual determination that "Veto is in arrears in the amount of $8,750.00," and he had "not paid any money" toward supporting his two children. Veto did not contest this factual finding, so it was within the trial court's authority to find him in contempt.

¶19. Third, Veto complains that the trial court should not have jailed him for his failure to pay child support, now arguing he is impoverished. But the trial court made a factual finding that Veto was simply not working or was working below his capacity. Veto was given multiple chances to purge himself of contempt, including by a subsequent trial court order staying proceedings for three days after the original order of incarceration. The trial court expressly found that Veto could purge himself of contempt if he paid the child support that was due. So Veto "metaphorically ha[d] the keys to the jailhouse door in his pocket," and could have purged the contempt. *Savell v. Manning*, 325 So. 3d 1208, 1220 (¶41) (Miss. Ct. App. 2021). Substantial evidence supports the trial court's conclusions that Veto had not paid child support and was refusing to obey orders of the court, so we affirm the finding of contempt. *Id*. at 1221 (¶45); *see also Lahmann v. Hallmon*, 722 So. 2d 614, 620 (¶21) (Miss. 1998) ("It is difficult to understand how a man who has gone so long paying so little can

7

reasonably object to an order requiring him to pay such a nominal amount to rectify his past disregard of a decree of a Chancery Court of this State").

¶20.    The refusal to comply with the child support order and intentional attempts to evade the mandate rule are part of a pattern by this litigant.  Veto has also made personal and professional attacks on both the trial court and members of this Court, in motions to recuse and in his briefing.  One such motion was struck sua sponte by this Court.  The order held the motion was "replete with frivolous allegations and disrespectful language directed toward the three judges who were the subject of the movant's motion for their recusal."  The order further determined that Veto's hostile "language 'serve[s] no purpose' [and] 'is of no aid to the Court and of no service to the [parties],'" relying on *City of Jackson v. Est. of Stewart ex rel. Womack*, 939 So. 2d 758, 763 (¶12) (Miss. 2005) (quoting *Guynn v. Shulters*, 223 Miss. 232, 262, 78 So. 2d 793, 793-94 (1955)).

¶21.    Our Constitution guarantees that courts "shall be open" to all Mississippians and that they "shall have remedy by due course of law[.]"  Miss. Const. art. 3, § 24 (1890).  Yet this does not mean that a litigant may then endlessly pursue a point that has been decided in the court system.  Once the mandate has issued, a case is over.  As our Supreme Court held long ago, once a "final decree had been entered," then "the cause was at an end."  *George v. Caldwell*, 98 Miss. 820, 54 So. 316, 316 (1911).  Our Judiciary has an interest in resolving disputes, not prolonging them, which is why we construe our Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." MRCP 1.  Accordingly, we recognize "the important policy favoring finality of judgments and the

8

expeditious termination of litigation." *William Iselin & Co. v. Delta Auction & Real Est. Co.*, 433 So. 2d 911, 913 (Miss. 1983); *Payton v. State*, 897 So. 2d 921, 955 (¶135) (Miss. 2003) ("Public policy requires a finality to litigation").

¶22.    The majority of the issues Veto raises have been expressly or impliedly decided by his prior appeal from the grant of divorce, so the trial court properly declined to revisit them in accord with the mandate rule.  As to the remaining issues, substantial evidence supported the Chancery Court of Jackson County's finding of contempt.

¶23.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, SMITH AND EMFINGER, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  LAWRENCE, J., NOT PARTICIPATING.**