Stephanie Pitt **WIGLER**

v.

**ELECTRONIC DATA SYSTEMS CORP. and Electronic Data Systems Federal Corp.**

**Civ. No. R 85–666.**

United States District Court, D. Maryland.

Nov. 21, 1985.

James H. Heller and Douglas B. Huron, Kator, Scott & Heller, Washington, D.C. and Michael J. Kator, Potomac, Md., for plaintiff.

David A. Copus and Ronald A. Lindsay, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C. and John H. Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., for defendants.

FREDERIC N. SMALKIN, United States Magistrate:

## I.

This is an employment discrimination suit brought by the plaintiff, Stephanie Pitt Wigler, against her former employer, Electronic Data Systems Federal Corp. (EDSFC), and Electronic Data Systems Corp. (EDS). The former is a wholly-owned subsidiary of the latter. On August 14, 1985, pursuant to 28 U.S.C. § 636(b) and Local Rule 80 of the District of Maryland, Judge Ramsey referred the case to me for determination of all non-dispositive pretrial matters. On October 4, 1985, Judge Ramsey made an additional referral to me for a Report and Recommendation on all dispositive motions. At this point, several motions are outstanding, some of which are still awaiting responses or replies under Local Rule 6, D.Md. Today, the Court takes up only one, *viz.*, plaintiff's motion for a protective order. (Paper # 31, November 12, 1985). I have reviewed the record and determined that no oral hearing is necessary. Local Rule 6, D.Md. Furthermore, the matter is so clear and the need for the Court's timely intervention so patent, that the Court shortened the response time of Local Rule 6 to one week. The defendant has timely opposed the plaintiff's protective order request. (Paper # 35, November 19, 1985).

## II.

Plaintiff's motion for a protective order, filed pursuant to FED.R.CIV.P. 26(c), requests that the Court "quash" defendant EDSFC's First and Second Requests for Admissions on the grounds that they are oppressive and unduly burdensome.

Properly used, requests for admissions serve the expedient purpose of eliminating "the necessity of proving essentially undisputed and peripheral issues of fact." *Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910, 917 (2d Cir.1959) (affirming the denial of plaintiff's motion to compel a response to its request for the admission of 30 acts, each of which was alleged to constitute a violation of the antitrust laws). Their proper, strategic use saves "time, trouble, and expense" for the court and the litigants. *Metropolitan Life Insurance Co. v. Carr*, 169 F.Supp. 377, 378 (D.Md. 1959) (Thomsen, CJ). *See* 4A *Moore's Federal Practice* ¶ 36.04[4] at 36–33 (2d ed. 1984).

Bearing in mind the functions properly served by requests for admissions, the Court turns to the matter *sub judice*, involving defendant's first and second requests for admissions. The first request was served October 11, 1985 and contains 986 separate requests. Defendant's second request, served October 30, 1985, contains 678 additional separate requests. Their total is 1,664 items. Both sets of requests incorporate some questions which contain multiple parts or cover multiple issues. Together, the requests are 370 pages in length, exclusive of attachments numbering more than 300 pages. These numbers alone presage the breadth of issues covered by the 1,664 questions. A closer look reveals that the defendant's requests represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers could possibly see in it. Answering these requests in a conscientious and timely way would have taxed the powers of Hercules, even before he cleaned the Augean Stables.

It is clear that discovery may not be avoided merely because it may involve "inconvenience and expense." *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D.Mich. 1979). The issue is whether justice requires that an order be issued "to protect a party or person from ... oppression, or undue burden or expense...." FED.R. CIV.P. 26(c). Necessarily, "undue burden" must be evaluated on a case-by-case basis. This is underscored by a 1983 amendment to Rule 26(b)(1), which deals with the problem of over-discovery, including that of "disproportionate discovery." *Notes of Advisory Committee on Rules*, Subdivision (b). Rule 26(b)(1) provides:

The frequency or extent of use of the discovery methods set forth in subdivi-

sion (a) shall be limited by the court if it determines that: ... (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

In considering whether to issue a protective order, then, a court should weigh the particular circumstances of the case, as measured by

its nature and complexity, the importance of the issues at stake ... the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms.... The court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.

*Notes of Advisory Committee on Rules,* Subdivision (b).

This Court finds that the requests at issue clearly impose an undue burden on the plaintiff; accordingly, it finds that it is appropriate to grant plaintiff's motion for a protective order. It reaches this conclusion in light of the purpose of the particular discovery device at issue, taking into account the circumstances of this single-plaintiff employment discrimination case. (The Advisory Committee on Rules has previously recognized that a protective order is a proper remedy where the requests to admit are "so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome." *Notes of Advisory Committee,* 1970 Amendment.)

Where a case is particularly complex, a large number of requests for admissions may be justifiable. *See, e.g., Al-Jundi v. Rockefeller,* 91 F.R.D. 590, 592 (W.D.N.Y. 1981) (154 admission requests not objectionable in complex civil rights case); *Shawmut, Inc. v. American Viscose Corp.,* 12 F.R.D. 488, 489 (D.Mass.1952) (106 admission requests not unreasonable in view of complexity of case); and 4A *Moore's Federal Practice* ¶ 36.04[7]. In contrast, the case *sub judice* is relatively straightforward. This litigation involves a single plaintiff and two affiliated corporate defendants, posing issues which are customary in employment discrimination actions.

The defendant argues that the admissions sought will facilitate a comparison of the plaintiff's qualifications and employment duties with that of the company's 45 proposal managers. It represents that the admissions device is an alternative to live testimony, which would require summoning these individuals "from all over the country." (Paper # 35, p. 4). Defendant's approach to proof at trial is marked by the same "overkill" which taints this discovery dispute. In both instances, counsel's strategy is a matter separate from what is reasonably necessary and is insufficient to justify the burdensome overuse of Rule 36.

In addition, the defendant attempts to justify the volume of admissions requested on the necessity "to pin plaintiff down and force her to choose which version of the facts she will rely on at trial." (Paper # 35, p. 5). Defendant's purpose is controverted by the function of requests for admissions, *i.e.,* to eliminate the need to prove facts which neither party disputes. To the extent that the plaintiff's depositions, etc., reflect internal inconsistencies or inconsistencies with her expected testimony at trial, the Court assumes that the defendant will utilize this information in the manner customary at trial, *viz.,* to impeach her as a witness.

The Court notes that Rule 36 is not a discovery tool in the truest sense, but, rather, is a procedure for obtaining admissions for the record of facts already known. 8 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2253 (1970). Further, admissions "should not be of such great number and broad scope as to cover all the

issues [even] of a complex case," and "[o]bviously ... should not be sought in an attempt to harass an opposing party." *Lantz v. New York Central Railroad Co.,* 37 F.R.D. 69 (N.D.Ohio 1963). There can be no question that defendant's request for the admission of 1,664 numbered items, excluding subparts, constitutes an intolerable distortion of the purpose of this particular discovery tool, *viz.,* to *save* time and expense for all by narrowing the issues to be tried. It also serves no useful purpose to invest a tremendous number of lawyer-hours in preparing such huge requests, especially where the sanction for an improper failure to admit, under Rule 37(c), is the recovery of expenses and fees incurred in proving the particular factual matter at issue. These expenses and fees, given the narrow scope of issues actually to be tried, as opposed to matters as to which discovery is sought, may be far less than the expense of preparing Rule 36 requests as to every matter that has turned up in the course of interrogatory and deposition discovery.

The filing of such an unjustifiable number of requests lends itself at least to the appearance of harassment of the plaintiff. Of course, actual harassment would be grounds for a protective order (which the Court has readily granted in this case on another basis, *viz.,* oppressiveness and undue burden), but it also would plainly justify the imposition of sanctions pursuant to amended Rule 11. In this regard, the Court deems the most salient fact to be that the movant for the protective order is one individual of apparently limited means. Mindful of the above-quoted comment to Rule 26(b)(1), urging the courts to evaluate the circumstances of a case so as to "prevent use of discovery to wage a war of attrition or as a device to coerce a party ... financially weak," the Court stops short of finding actual harassment or oppression sufficient to justify *sua sponte* imposition of sanctions under Rule 11, resting instead on the adequacy of the protective order herein granted as a device to prevent actual harassment or oppression of the plaintiff. However, it should be clear

henceforth to all counsel that plain overkill in requesting admissions will be viewed with utmost disfavor by this Court.

A hearing will be scheduled to address fees and expenses incurred by the plaintiff in obtaining this protective order, under Rules 26(c) and 37(a)(4).