921 So.2d 260 (2005)
MISSISSIPPI FARM BUREAU MUTUAL INSURANCE COMPANY, Mississippi Farm Bureau Casualty Insurance Company and Southern Farm Bureau Casualty Insurance Company
v.
Kim PARKER.
Mississippi Farm Bureau Mutual Insurance Company
v.
Kim Parker.
No. 2005-IA-00740-SCT.
Supreme Court of Mississippi.
June 30, 2005.
Rehearing Denied March 2, 2006.

ORDER
¶ 1. This matter came before the Court en banc on the Combined Petition and Brief for Interlocutory Appeal and Motion for Stay filed by Mississippi Farm Bureau Mutual Insurance Company, Mississippi Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Casualty Insurance Company (Farm Bureau). Petitioner seeks leave to appeal from the order of the Circuit Court of the Second Judicial District of Jones County, Mississippi, civil cause number 2002-270-CV9 entered on March 21, 2005. After due consideration the Court finds that the requirements of M.R.A.P. 5 have been met and that the petition for interlocutory appeal is well taken and should be granted. The Court further finds that no further briefing is needed and will proceed to a consideration of the merits.
¶ 2. After Farm Bureau filed its petition for interlocutory appeal, with voluminous attached exhibits, the plaintiff/respondent, Kim Parker (Parker) filed her six-volume response in opposition to the petition for interlocutory appeal, which response likewise contains voluminous exhibits. Farm Bureau then filed its reply in rebuttal to Parker's response. Thereafter, Parker filed her motion to strike all rebuttal pleadings and attachments previously filed by Farm Bureau. Finally, Farm Bureau filed its response to Parker's motion to strike.
¶ 3. This interlocutory appeal has resulted in literally thousands of pages being placed before us for review. The issue before us  a discovery dispute. The nature *261 of this case is a bad faith insurance claim for Farm Bureau's alleged failure to in good faith provide coverage under a homeowner's policy as a result of damage to Parker's home due to mold infestation allegedly caused by a leak in a sewage drainage pipe. The actual cause of the mold infestation is hotly disputed. In its petition, Farm Bureau asserts that "[c]ounting the subparts.......... [Parker] propounded to each defendant, over 130 Interrogatories..........and over 26,000 Requests for Documents." (Emphasis in the original).
¶ 4. On October 18, 2004, the trial court entered orders, as submitted by Parker, on Parker's motion to compel as to each of the three Farm Bureau defendants. The orders to compel which the trial court entered against Mississippi Farm Bureau Mutual, Mississippi Farm Bureau Casualty, and Southern Farm Bureau Casualty were 39 pages, 23 pages, and 23 pages, respectively, in length. On the first page of each of the three orders, we find the following identical language (with the exception of the name of the particular defendant): "[T]he Court.....hereby OVERRULES all of Defendant's general objections to the Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents, and ORDERS that Defendant, [], within thirty (30) days from the date of this Order on Plaintiff's Motion to Compel, respond to Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents...." By separate order, likewise entered on October 18, 2004, the trial court considered the Farm Bureau defendants' motion for a protective order in response to Parker's motion to compel; however, the trial court neither granted nor denied the motion for a protective order, but instead ordered the parties "to comply with the Mississippi Rules of Civil Procedure in preparing and producing Interrogatories and Requests for Production of Documents propounded on April 22, 2003, and in responding to same."
¶ 5. On March 21, 2005, the trial court denied Parker's motion for sanctions and also denied the Farm Bureau defendants' motion for reconsideration and motion for sanctions. It is from this order that Farm Bureau petitions this Court for an interlocutory appeal.
¶ 6. By order entered on May 12, 2005, a three-justice panel of this Court stayed the trial court proceedings and directed the trial court clerk to prepare and transmit a copy of the circuit court file to the Clerk of this Court. The Jones County Circuit Clerk timely complied with this directive. Based on the circuit clerk's timely filing of a copy of the court file, we now have an additional 2,655 pages of documents and pleadings before us.
¶ 7. The language contained in the pleadings filed by both Farm Bureau and Parker is more than a little contentious. Farm Bureau describes Parker's discovery requests as "bizarre and outrageous" and "flagrantly abusive." Parker's response asserts that Farm Bureau has failed to comply with the trial court's orders, has grossly overstated the number of discovery requests, and has "actively concealed hundreds of pages of discoverable documents." In its rebuttal, Farm Bureau describes Parker's claim of concealment to be "reckless" and that Parker's counsel is evidently claiming that Farm Bureau's counsel are "not only wicked, but stupid as well." In her motion to strike, Parker asserts that Farm Bureau has ignored the Mississippi Rules of Appellate Procedure, and that Farm Bureau's rebuttal pleadings and attachments should be stricken and she should be awarded costs. In Farm Bureau's response to Parker's motion to *262 strike, it asserts that Parker is dodging the issue and that this Court is admittedly being requested to "jump into the middle" of a discovery dispute because a mere reading of Parker's discovery requests reveals that "the requests are `just that bad.'" (Emphasis in the original). These are but examples of the contentiousness between the parties and the attorneys as evidenced by the various documents before us.
¶ 8. There is absolutely no way that the trial bench and bar, as well as the litigants and the general public, can appreciate the time that this Court is compelled to devote to interlocutory appeals in civil cases, many of which are time-sensitive, thus requiring the prompt attention of at least three justices of this Court, and quite often the en banc court. It has become routine for parties to petition for interlocutory appeals from trial court rulings regarding denial of summary judgments, discovery disputes and simple evidentiary rulings. It has for some time become abundantly clear to this Court that the mind-set of many attorneys is that if a perceived unfavorable pre-trial ruling is received from the trial court, then attempt to abruptly halt the trial court proceedings and file an interlocutory appeal with the Supreme Court. This conduct has unfortunately become wide-spread amongst members of the bar. Additionally, it is hardly uncommon for this Court to receive an interlocutory appeal from an adverse ruling of the trial court, while the trial is actually in progress  thus requiring the immediate attention of this Court. Whether we eventually grant or deny an interlocutory appeal, the decision comes only after this Court has spent a disproportionately large amount of time on that one case issue, taking time away from deciding pending cases on their merits.
¶ 9. We are indeed approaching the point of having to take action similar to that taken seventeen years ago by the United States District Court for the Northern District of Texas in Dondi Properties Corp. v. Commerce Savings & Loan Ass'n, 121 F.R.D. 284 (N.D.Tex.1988), (en banc).
¶ 10. The Dondi court convened en banc to not only address the issues of that particular case, but to also generally adopt standards of litigation conduct for attorneys involved in civil litigation before the federal court in the Northern District of Texas. In Dondi, there were pending before a federal magistrate numerous motions, including a party's third motion for sanctions, or in the alternative, to compel, and supplement to the motion; another party's third motion for sanctions, and supplement to the motion; another party's first motion for sanctions, or in the alternative, motion to compel, and supplement to the motion; a party's motion for sanctions against an attorney; another party's first motion for sanctions, or in the alternative, motion to compel; another party's motion for sanctions and, in the alternative, to compel; and various other submissions, as well as responses to these various motions and submissions. The various motions contained complaints of, inter alia, failure to answer interrogatories, failure to comply with prior orders of the court pertaining to discovery, misrepresenting facts to the court, and improperly withholding documents. 121 F.R.D. at 285. There was also pending before one of the district judges a party's motion to strike a reply brief, a party's four motions for separate trials and to join another party, a reply to a response, a motion to strike the reply, a reply to the motion to strike reply, and various other motions and responses. Id. at 285-86.
¶ 11. We quote extensively from Dondi:

*263 We address today a problem that, though of relatively recent origin, is so pernicious that it threatens to delay the administration of justice and to place litigation beyond the financial reach of litigants. With alarming frequency, we find that valuable judicial and attorney time is consumed in resolving unnecessary contention and sharp practices between lawyers. Judges and magistrates of this court are required to devote substantial attention to refereeing abusive litigation tactics that range from benign incivility to outright obstruction. Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive. As judges and former practitioners from varied backgrounds and levels of experience, we judicially know that litigation is conducted today in a manner far different from years past. Whether the increased size of the bar has decreased collegiality, or the legal profession has become only a business, or experienced lawyers have ceased to teach new lawyers the standards to be observed, or because of other factors not readily categorized, we observe patterns of behavior that forebode ill for our system of justice. We now adopt standards designed to end such conduct.
* * * * * * * * *
We think the standards we now adopt are a necessary corollary to existing law, and are appropriately established to signal our strong disapproval of practices that have no place in our system of justice and to emphasize that a lawyer's conduct, both with respect to the court and to other lawyers, should at all times be characterized by honesty and fair play.
Id. at 286, 288-89 (footnotes omitted). Although we are some seventeen years removed from Dondi, we agree with the Dondi court's assessment, as it now applies to the current contentious legal environment in the state of Mississippi. The Dondi court adopted standards which, although we will not detail here, are similar to the Lawyer's Creed.
¶ 12. Our well-familiar but perhaps all-too-often forgotten Lawyer's Creed, states:
1) I revere the Law, the System, and the Profession, and I pledge that in my private and professional life, and in my dealings with fellow members of the Bar, I will uphold the dignity and respect of each in my behavior toward others.
2) In all dealings with fellow members of the Bar, I will be guided by a fundamental sense of integrity and fair play; Effective advocacy does not mean that any tactic is acceptable.
3) I will not abuse the System or the Profession by pursuing or opposing discovery through arbitrariness or for the purpose of harassment or undue delay.
4) I will not seek accommodation from a fellow member of the Bar for the rescheduling of any Court setting or discovery unless a legitimate need exists. I will not misrepresent conflicts, nor will I ask for accommodation for the purpose of tactical advantage or undue delay.
5) In my dealings with the Court and with fellow counsel, as well as others, my word is my bond.
6) I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.
7) I recognize that my conduct is not governed solely by the Code of Professional Responsibility, but also by standards of fundamental decency.

*264 8) I will strive to be punctual in communications with others and in honoring scheduled appearances, and I recognize that neglect and tardiness are demeaning to me and to the Profession.
9) If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, I will not arbitrarily or unreasonably withhold consent.
10) I recognize that effective advocacy does not require antagonistic or obnoxious behavior, and as a member of the Bar, I pledge to adhere to the higher standard of conduct which we, our clients, and the public may rightfully respect.
¶ 13. We acknowledge that in recent years, the Mississippi Bar has devoted entire issues of its official publication, The Mississippi Lawyer, to the timely issues of ethics, civility and professionalism amongst members of the Bar. This Court has also recently had occasion to address these issues.
Notably, the Mississippi Bar as well as Mississippi College School of Law and the University of Mississippi School of Law have taken additional measures in order to address Ethics and Professional Conduct among the Bar. Specifically, the Mississippi Bar has devoted several issues to Ethics and Professionalism in an attempt to "reign-in" behavior similar to Kelly's. More recently, both the Mississippi College School of Law and the University of Mississippi School of Law began conducting an annual Law School Professionalism Program that is presented to entering law students. Prior to the initiation of this program, courses on Ethics and Professionalism were not available until much later in the curriculum. While sponsored by the Mississippi Bar, many noted attorneys and judges participate in this program to inform entering law students of the high standards they will be held to and also to deter them from engaging in unprofessional, unethical and ill-advised behavior like that exhibited by Kelly.
In re Kelly, 912 So.2d 823, 827 (Miss.2005).
¶ 14. While certainly, the actions of the parties and attorneys in today's case in no way approach the contemptuous actions directed toward the Court as depicted in Kelly, the words and actions of the parties and attorneys directed toward each other in the case sub judice, certainly compel us to address such actions and similar actions in other cases from the standpoint of civility and professionalism, as these traits relate to the interaction among members of the bar with each other. Thus, we find the above-quoted language from Kelly to be applicable in today's case. We also note that earlier this year, the Mississippi Bar Professionalism Committee conducted a survey concerning civility and professionalism in our Mississippi legal community. In responding to the Professionalism Committee's request for comments, the attorneys who replied to the request revealed the five most frequent problems which they encountered in the area of civility/professionalism. In turn, the Committee then requested our trial judges to rank from 1 to 5 (1 being the most prevalent and 5 being the least prevalent) the seriousness of each of these perceived problem areas. The results are telling:
Misstatements to the Court/Opposing Counsel
Lawyers  3.38
Judges  3.81
Failure to return phone calls
Lawyers  2.58
Judges  3.34
Lack of respect for adversary
Lawyers  3.04
Judges  2.78

*265 Frivolous Objections in discovery
Lawyers  2.82
Judges  2.73
Refusal to cooperate in setting motions/trials
Lawyers  3.19
Judges  2.40
¶ 15. While it is not our intent to single out the attorneys in today's case, we feel compelled to use today's all-too-familiar set of facts as a vehicle to inform the trial bench and bar of this persistent problem. The facts of today's case are amazingly similar to the facts in Dondi. Of course, one glaring difference between Dondi and today's case is that in Dondi, the trial court, with the judges sitting en banc, adopted its standards of conduct, whereas, we are confronted with facts similar to that in Dondi, but at the appellate level. This Court is increasingly being called upon by civil litigants unhappy with trial court rulings concerning, inter alia, discovery issues, to "micro-manage" discovery at the trial court level. We do not have the resources to serve as trial court magistrates, nor are we the ones in the best position to address such issues. That is not to say that we have not deemed it necessary to indeed become involved in trial court discovery disputes. See Hewes v. Langston, 853 So.2d 1237 (Miss.2003). However, a reading of Hewes, can quickly cause one to conclude that this Court spent an inordinate amount of time to resolve the discovery disputes, only to be able to remand the case back to the trial court for further proceedings in order to continue on toward final resolution of the case.
¶ 16. Additionally, as evidenced by the record before us in today's case, neither do our trial judges have the necessary resources to deal with discovery disputes similar to the one before us today. We acknowledge the justifiable frustration of our overworked and understaffed trial judges who are consistently called upon by parties and lawyers to resolve contentious and complex discovery disputes necessitating the reading of sometimes thousands of pages of documents. The parties/lawyers place virtually impossible demands on our trial judges because of the apparent unwillingness of the parties/lawyers to sit down in a civil and professional manner and attempt to objectively and fairly resolve among themselves these discovery disputes. What we are witnessing more and more, especially by way of these interlocutory appeals, amounts to nothing more than "Rambo-type" tactics in an effort to, inter alia, force a settlement. Lawyers need to remember that while they are compelled under their oaths to be zealous advocates for their clients, they also owe an absolute duty, as officers of the court, to adhere to moral standards of fundamental decency, and to aid the trial courts to bring about fair and expeditious resolutions of the pending cases in which they are involved.
¶ 17. However, if parties and attorneys persist in their obstinate refusal to cooperate to the extent that they insist in every case "to let the judge decide," then it is our trial judges, and not this Court, which need to resolve these pre-trial issues. Our trial judges are charged with this responsibility and are in a much better position to resolve all pre-trial issues, including discovery, and it is not, and should not, be part of our mandated appellate review, to resolve such issues. This was not the reason M.R.A.P. 5 was judicially enacted by this Court. Our trial judges are likewise in a much better position to decide which parties and/or lawyers need to be sanctioned for their behavior, and our trial judges should unhesitatingly exercise this inherent power and authority.
¶ 18. Having said this, we likewise acknowledge that the trial judge in today's *266 case, is one of the most experienced trial judges in this state, with over thirty years on the trial bench, but he is also the only judge in that circuit court district, which has a heavy caseload. Likewise, today's case involves parties who are ably represented by well-respected lawyers who are very competent and experienced. Today's action should not be perceived by them, or anyone else, as a negative reflection on those who are involved in the case sub judice; but instead, without hesitation, because of their stature in our legal community, we look to these lawyers in today's case, and other lawyers similarly situated, to give positive guidance to our younger lawyers, through their words and their actions.
¶ 19. In sum, we will continue to be ever vigilant to afford appropriate relief via M.R.A.P. 5 interlocutory appeals; however, in dealing with future interlocutory appeals, we will not hesitate to do that which we are instructing our trial judges to do  rein-in this contentiousness which exists amongst our litigants and their lawyers.
¶ 20. The trial judge entered, in toto, discovery orders which were submitted by Parker's counsel. While we will not attempt to discuss numbers, suffice it to say that Parker's interrogatories far exceed the number allowed pursuant to Miss. R. Civ. P. 33, and, while, unlike Rule 33, Miss. R. Civ. P. 34 does not place a number limit on the requests for production of documents, the tenor of the rule and the comments, and a reading of the rules of discovery in toto, clearly reveal a requirement of reasonableness and fair play and a proscription of attempts to unreasonably burden a party with discovery. Rules 26, 33, and 34 of the Mississippi Rules of Civil Procedure govern written interrogatories and requests for production of documents. These rules are clear and unambiguous. Miss. R. Civ. P. 33(a) provides, in pertinent part,
Any party may serve as a matter of right upon any other party written interrogatories not to exceed thirty in number... Each interrogatory shall consist of a single question.... Leave of court, to be granted upon a showing of necessity, shall be required to serve in excess of thirty interrogatories.
(emphasis added). The number propounded "are to be computed by counting each distinct question as one of the thirty, even if labeled a sub-part, subsection, threshold question, or the like." Miss. R. Civ. P. 33, cmt. As Rule 33 unequivocally mandates, if a party wishes to submit more than thirty interrogatories, that party shall seek leave of the court, and such granting by the court of additional interrogatories is permissible only "upon a showing of necessity." Regarding requests for production of documents, Miss. R. Civ. P. 34 requires that these requests must be "within the scope of Rule 26(b)." When justice requires, a protective order shall be entered "to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense." Miss. R. Civ. P. 26(d).
¶ 21. This Court further finds that the subject written interrogatories and requests for production of documents, are in fact, grossly excessive in number, unduly burdensome, oppressive, confusing as drafted, and fail to comply with the above stated rules of civil procedure.
¶ 22. Based on the record before us, we are constrained to find that the learned trial judge abused his discretion in the entry of these orders, and we thus set aside these discovery orders and remand this matter to the trial court to visit anew all discovery issues which were pending before the trial court prior to the entry of these orders. Cf. Joseph L. v. Conn. *267 Dep't. of Children & Families, 225 F.R.D. 400, 403 (D.Conn.2005), Wigler v. Electronic Data Sys. Corp., 108 F.R.D. 204 (D.Md. 1985). While the trial judge instructed the attorneys and parties to follow the discovery rules, the record before us reveals that such rules were not followed. We order the attorneys for Parker and Farm Bureau, prior to attempting to schedule a hearing before the trial court, to commence good faith efforts to at least narrow the disputed issues, if not in fact resolve them all.
¶ 23. Our rules of discovery as judicially codified in Miss. R. Civ. P. 26-37, have been in effect for over twenty-three years. Though quite often not followed, they are hardly unfamiliar to practitioners. In addition to their inherent power and authority, trial courts have the unequivocal authority to impose sanctions via, inter alia, Miss. R. Civ. P. 26(c), 26(d), 30(g), and, most importantly 37(b)(c)(d)(e). Our learned trial judges should act promptly to sanction those who would abuse our rules.
¶ 24. Likewise, this Court will not hesitate to exercise its inherent power and authority to impose sanctions where necessary upon our disposition of an interlocutory appeal  whether it be by sanctioning those whose conduct at the trial court level necessitated an interlocutory appeal which out of necessity is granted and rendered, or by sanctioning those whom we find have abused the interlocutory appeal process on matters which are clearly not appropriate for M.R.A.P. 5 consideration.
¶ 25. Accordingly, the trial court orders compelling discovery should be set aside, and this matter should be remanded to the Circuit Court of the Second Judicial District of Jones County, Mississippi for further proceedings consistent with this Order. The Court further finds that this Order should be published as an announcement to all members of the Bar.
¶ 26. IT IS THEREFORE ORDERED that the Combined Petition for Interlocutory Appeal filed by Mississippi Farm Bureau Mutual Insurance Company, Mississippi Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Casualty Insurance Company be and the same is hereby granted.
¶ 27. IT IS FURTHER ORDERED that the three orders granting Parker's motions to compel discovery, which orders are dated October 15, 2004, and were entered October 18, 2004, be and the same are hereby set aside.
¶ 28. IT IS FURTHER ORDERED that this matter is hereby remanded to the Circuit Court of the Second Judicial District of Jones County, Mississippi for further proceedings consistent with this Order.
¶ 29. IT IS FURTHER ORDERED that all costs of this appeal are taxed equally to the Petitioners and the Respondent.
¶ 30. IT IS FURTHERED ORDERED that this Order be published, and that the Clerk of this Court shall spread this Order upon the minutes of the Court and shall forthwith forward a true certified copy hereof to West Publishing Company for publication as soon as practical in the advance sheets of the Southern Reporter, Second Series (Mississippi Edition).
¶ 31. SO ORDERED.
/s/ George C. Carlson, Jr.
George C. Carlson, Jr., Justice
FOR THE COURT
SMITH, C.J., WALLER and COBB, P.JJ., EASLEY, DICKINSON and RANDOLPH, JJ., concur.
GRAVES, J., dissents to the order and files separate written statement.
DIAZ, J., not participating.
*268 GRAVES, J., Dissenting.
¶ 32. I find it the height of irony that this Court takes an opportunity to rightfully chastise litigants regarding contentious litigation practices in a case which is before this Court on an interlocutory appeal. Litigants are encouraged to file petitions for permission to bring an interlocutory appeal by this Court's inclination to grant those petitions. Lecture notwithstanding, the majority grants the petition for interlocutory appeal. Instead of grant and chastise, I would deny and chastise.