**John B. THOMPSON, Plaintiff**

v.

**The FLORIDA BAR, Francisco Angones, John Harkness, and Dava Tunis, Defendants.**

**No. 07–21256–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 20, 2007.

Order Denying Motion for Reconsideration Nov. 21, 2007.

John Bruce Thompson, Coral Gables, FL, pro se.

Karusha Young Sharpe, Greenberg Traurig, P.A., Tallahassee, FL, Charles M. Fahlbusch, Attorney General Office, Fort Lauderdale, FL, for Defendants.

Norman Elliott Kent, Fort Lauderdale, FL, pro se.

ORDER OF DISMISSAL WITHOUT PREJUDICE

ADALBERTO JORDAN, District Judge.

In this lawsuit, John Thompson, a Florida lawyer, seeks to enjoin disciplinary proceedings that have been brought against him by the Florida Bar and to declare certain Florida Bar rules unconstitutional. The defendants named in Mr. Thompson's verified third amended complaint are the Florida Bar, Francisco Angones (the President of the Florida Bar), John Harkness (the Executive Director of the Florida Bar), and Judge Dava Tunis (in her capacity as the referee in the Florida Bar disciplinary proceedings). All of the defendants moved to dismiss Mr. Thompson's third amended complaint on various grounds, including *Younger/Middlesex* abstention, and the parties presented oral

argument on the motions to dismiss on October 9, 2007. For the reasons which follow, the defendants' motions to dismiss [D.E. 113, 118] are GRANTED, and Mr. Thompson's third amended complaint is dismissed without prejudice on *Younger/Middlesex* abstention grounds. I do not address the defendants' other grounds for dismissal.

### I. THE RULE 12(B)(6) STANDARD

Under Rule 12(b)(6), a court must "accept as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534(11th Cir.1994). Review is limited to the four corners of the complaint and exhibits attached to or referenced in the complaint. *See GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11 th Cir. 1993).

But not everything in a complaint is necessarily taken at face value. For example, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.2002). Thus, to "survive a motion to dismiss, [a] plaintiff[ ] must do more than merely state legal conclusions; [he] is required to allege some specific factual bases for those conclusions or face dismissal[.]" *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263 (11th Cir.2004). As the Supreme Court recently explained, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

### II. THE WELL–PLEADED ALLEGATIONS AND CLAIMS IN THE THIRD AMENDED COMPLAINT[1]

Mr. Thompson's 45–page verified third amended complaint is is a "shotgun" plead-

---

1. Only the well-pleaded factual allegations in

Mr. Thompson's verified third amended com-

ing in violation of established Eleventh Circuit law, as each of the three counts improperly incorporates by reference all of the allegations in the previous counts. For example, Count III realleges and incorporates by reference the complaint's previous 100 paragraphs, including those that comprise Counts I and n. "[T]his type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts ... and is the type of complaint that [the Eleventh Circuit] has criticized time and again." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.2001). Despite Mr. Thompson's violation of the Federal Rules of Civil Procedure, all of the relevant allegations in the complaint are summarized below.

## A. BACKGROUND

This lawsuit concerns the Florida Bar's current disciplinary proceedings against Mr. Thompson. The allegations contained in the complaint nevertheless go back to 1990.

Approximately 20 years ago, Mr. Thompson heard a Miami shock jock, Neil Rogers, solicit teenage boys for sex on the public airwaves. He complained to the FCC, and as a result of his complaint, the FCC levied its first decency fines in 1989 against the radio stations that aired Mr. Rogers' comments. Mr. Rogers responded to Mr. Thompson's complaint by filing SLAPP (Strategic Litigation Against Public Participation) lawsuits against Mr.

Thompson through his attorney, Norman Kent (who is, according to the complaint, a "gay rights" lawyer). *See* Complaint at ¶¶ 13–15.

Mr. Kent collaborated with the former chairman of the Florida ACLU to persuade the Florida Bar to proceed against Mr. Thompson on the basis that his anti-pornography obsession left him mentally unfit to practice law. Around 1990, the Florida Bar secured an ex parte order from the Florida Supreme Court mandating that Mr. Thompson submit to a battery of tests to determine if he was insane. This order, and the testing, were made public and destroyed Mr. Thompson's legal career at the time. The Florida Bar's experts determined that Mr. Thompson was sane and simply acting out his Christian faith. The Florida Bar's insurance carrier later paid Mr. Thompson money damages for what he had to undergo. *See id.* at ¶¶ 15–16.

In the last 16 years Mr. Thompson has published a book on his activism and faith, and has appeared on roughly 250 national and international television programs regarding "the commercial assault by the entertainment industry" on children. He has also secured more FCC decency fines, granted over 1,000 radio interviews around the world, appeared on 200 college campuses, addressed the ABA several times, and helped obtain (as *amicus curiae*) the first federal court verdict holding that a

plaint (hereinafter referred to as "the complaint" for ease of reference) are summarized. I am not considering the allegations in the prior complaints because "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir.2006). *See also Rockwell Int'l Corp. v. United States*, — U.S. —, —, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007) ("when a plaintiff files a complaint in

federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction"); *Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir.1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Furthermore, I am not accepting, as well-pleaded factual allegations, those paragraphs of the complaint which discuss Mr. Thompson's interpretation of applicable law. *See generally* Complaint at ¶¶ 70–89.

sound recording was obscene. According to Mr. Thompson, entertainment companies like Sony, Microsoft, and Time–Warner routinely make and market adult products to children and file SLAPP lawsuits against their critics. *See id.* at ¶ 17.

In February of 2004, Mr. Thompson forced the removal of Howard Stern from Clear Channel radio stations throughout the United States for making indecent comments on the air. In August of 2004, Mr. Thompson filed FCC complaints against Beasley Broadcast Group, Inc. for airing, on a South Florida radio station, indecent material by Mr. Stern. Mr. Stern complained that "this lunatic lawyer" (i.e., Mr. Thompson) got him off the air. Mr. Thompson also wrote government officials, including then-Florida Governor Jeb Bush, about the "criminal" activity going on at Beasley Broadcast's Miami station, WQAM. *See id.* at ¶¶ 18, 20.

Days after Mr. Thompson filed the FCC complaints against Beasley Broadcast, Mr. Kent filed a "wave" of SLAPP Bar disciplinary complaints against Mr. Thompson and threatened Mr. Thompson with new Bar "lunacy" proceedings. Beasley Broadcast's outside counsel, Al Cardenas (a close friend of Governor Bush) and the law firm of Tew Cardenas, together with the CFO of Beasley Broadcast, also field a "massive" SLAPP Bar complaint against Mr. Thompson in retaliation for the letters he had written to government officials about Beasley Broadcast. *See id.* at ¶¶ 19, 20.

The Tew Cardenas/Beasley Broadcast complaints are still pending. This, according to the complaint, is despite the offer of the Florida Bar's counsel, Sheila Tuma, to dismiss them with prejudice. *See id.* at ¶ 21.

The Florida Bar's outside investigator, David Pollack, assured Mr. Thompson that Mr. Kent's complaint "was gone," and his written report confirmed that. Mr. Kent's complaint, however, was only dismissed with prejudice by the Florida Bar after two and a half years. That complaint lasted as long as it did because Ben Kuehne, "a left wing ideologue," served for nearly three years as the "designated reviewer" in the SLAPP disciplinary proceedings brought against Mr. Thompson.[2] Mr. Thompson unsuccessfully sought to have Mr. Kuehne removed as his "designated reviewer," and Mr. Kuehne—in "apparent pursuit of his ideological agenda"—overrode the recommendation of the Florida Bar's own investigator and persuaded Grievance Committee 11–F to find probable cause as to the baseless charges brought against Mr. Thompson by Mr. Kent. This was an attempt by Mr. Kuehne and the Florida Bar to "chill" Mr. Thompson's First Amendment rights. *See id.* at ¶¶ 22–25, 56. In fact, according to Mr. Thompson, the Florida Bar's actions have been an intentional attempt to punish him for exercise of his First Amendment rights. *See id.* at ¶¶ 76, 84.

In March of 2005, days before Grievance Committee 11–F found probable cause, Mr. Thompson appeared on *60 Minutes* to discuss the "central role" that Take Two's *Grand Theft Auto: Vice City* video game played in a triple homicide of three Alabama police officers.[3] Years earlier, Mr. Thompson had appeared on *60 Minutes* to discuss the "clear and proven role" of violent entertainment in the school massacres at Paducah, Kentucky, and Columbine High School. Mr. Thompson had "predicted Columbine one week before it happened on NBC's *Today* show." In retaliation for

---

**2.** The "designated reviewer" is a member of the Board of Governors "responsible for review and other specific duties" assigned by the Board of Governors with respect to a particular matter. *See* Florida Bar Rule 3–2.1(p).

**3.** Take–Two is an entertainment/video-game company.

his appearance on *60 Minutes*, the law firm of Blank Rome, which acted as counsel for Take–Two, "fraudulently obtained revocation" of Mr. Thompson's *pro hac vice* admission to practice in Alabama to pursue the wrongful death action (apparently involving the deaths of the policemen). *See id.* at ¶¶ 27–30.

### B. THE BLANK ROME/JUDGE MOORE COMPLAINTS AGAINST MR. THOMPSON

Blank Rome also filed SLAPP complaints against Mr. Thompson with the Florida Bar. These complaints are currently pending. In addition, the Florida Bar and the Alabama state judge who presided over the murder trial of the person accused of killing the policemen, Judge James Moore, filed their own complaints against Mr. Thompson. These complaints concern Mr. Thompson's statement that he had been told by a prominent Alabama lawyer that he could fix the murder case before Judge Moore, as well as a claim that Mr. Thompson had hidden his disciplinary history from the Alabama courts in order to secure his *pro hac vice* admission. *See id.* at ¶¶ 31–32. The Florida Bar is proceeding with these complaints without waiting to see if Mr. Thompson is found guilty of misconduct in Alabama, and even though it knows that Mr. Thompson's statements about Judge Moore are truthful. *See id.* at ¶¶ 59, 76, 84.[4]

On August 20, 2007, Mr. Thompson took the deposition of Judge Moore, who had foiled to file his complaint under oath with the Florida Bar. Judge Moore admitted at his deposition that Mr. Thompson had *actually provided more information* about his past disciplinary history (a public reprimand in 1992 for minor misconduct) than he was required to provide. The Florida Bar, according to Mr. Thompson, knew that Judge Moore's complaint about the lack of disclosure by Mr. Thompson was false, failed to require that Judge Moore's complaint be sworn, and tailed to investigate the matter as required by its own rules. The Florida Bar also foiled to respond to Mr. Thompson's discovery requests, which were meant to obtain information as to what Mr. Thompson had supposedly not disclosed. Even now the Florida Bar's counsel, Ms. Tuma, refuses to drop the charges made against Mr. Thompson by Blank Rome and Judge Moore. *See id.* at ¶¶ 33–37.

### C. JUDGE FRIEDMAN'S COMPLAINT AGAINST MR. THOMPSON

Mr. Thompson brought a lawsuit in Florida state court seeking to apply Florida's nuisance law to *Bully*, another violent video game marketed to children by Take Two. The judge in that case was Judge Ron Friedman. Mr. Thompson sat in Judge Friedman's chambers and witnessed Judge Friedman's failure to review *Bully*, in violation of his own orders. When Mr. Thompson took an appeal to Florida's Third District Court of Appeal (it is unclear what the appeal related to), Judge Friedman filed an unsworn SLAPP complaint against Mr. Thompson with the Florida Bar in retaliation for Mr. Thompson's truthful statements to the media and the Third District. The Florida Bar knows that Mr. Thompson's statements about Judge Friedman are truthful. *See id.* at ¶¶ 38, 39, 76, 84.[5]

---

4. Mr. Thompson alleges that the Florida Bar is required to wait for Alabama's disciplinary process to run its course before proceeding against him, *see* Complaint at ¶ 59, but he is wrong. The rule Mr. Thompson cites, Florida Bar Rule 3–4.6, only states that a "final adjudication in a disciplinary proceeding" in another jurisdiction, state or federal, that an attorney is "guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule."

5. Mr. Thompson does not specify what those truthful statements are, but it can be inferred

### D. OTHER COMPLAINTS AGAINST MR. THOMPSON

At some unspecified times, two "video game enthusiasts" filed formal sworn complaints against Mr. Thompson with the Florida Bar. One of the complainants was the owner and operator of a video game industry website, *www.gamepolitics.com.* These complaints were "kept alive" for months by the Florida Bar, but apparently are no longer pending. *See id.* at ¶ 89.

### E. THE PENDING BAR DISCIPLINARY PROCEEDINGS: THE COMPLAINTS FILED BY BLANK ROME/JUDGE MOORE AND BY JUDGE FRIEDMAN

At a mediation in June of 2007, the Florida Bar informed Mr. Thompson that Mr. Kuehne, his designated reviewer, had recused himself from the disciplinary proceedings after three years.[6] Mr. Thompson's new designated reviewer is Steve Chaykin, a supporter of gay adoption who has stated that unless one supports the position that the Florida Bar should lobby for gay adoption, he or she is "an enemy of the core values" of the Florida Bar. Mr. Thompson alleges that having Mr. Chaykin as his designated reviewer is a denial of due process given the very different viewpoints that the two have over issues like gay adoption. *See id.* at ¶¶ 43–44, 62.

The Florida Bar further demanded that Mr. Thompson plead guilty to things he did not do, and that Mr. Thompson (after pleading guilty) be assessed for mental incapacity again by the Florida Lawyers Assistance Program. The Florida Bar threatened Mr. Thompson with disbarment if he did not agree to these terms. The Florida Bar's demand of another "lunacy" examination was not preceded by a sworn complaint as required by the rules of the Florida Bar. Mr. Thompson retained a leading forensic psychologist, Dr. Owen Wunderman, to conduct a formal assessment. Although Dr. Wunderman found Mr. Thompson to be sane,[7] the Florida Bar refuses to drop its demand for a post-plea psychological assessment. Mr. Thompson alleges that the Florida Bar is seeking to destroy his career and extort him into resigning from the Florida Bar. *See id.* at ¶¶ 43–49, 61.[8]

The disciplinary complaints against Mr. Thompson are proceeding to trial before Judge Dava Tunis, in her role as a referee. Mr. Thompson alleges in conclusory fashion that the disciplinary complaints filed against him lack specificity, but he does not quote the complaints or attach them to his third amended complaint. According to Mr. Thompson, the Florida Bar has refused to disclose to him exactly what it is that he is alleged to have done wrong, and refuses to designate anyone for deposition, making the broad claim that Mr. Thompson is seeking "privileged and confidential" information, even though it does not know what questions Mr. Thompson will ask. Referee Tunis has "ruled preemptively" that all of Mr. Thompson's questions will seek "privileged and confidential" informa-

---

that the statements in question relate to Judge Friedman's failure to review *Bully.*

**6.** Mr. Thompson alleges that Mr. Kuehne has received a Department of Justice "target letter" with respect to the laundering of narcotics proceeds, and that the Florida Bar foiled to tell him (Mr. Thompson) of this letter. *See* Complaint at ¶ 49.

**7.** The complaint states that Dr. Wunderman's formal assessment is attached, *see* Complaint at ¶ 47, but no such assessment is an exhibit to the complaint.

**8.** Mr. Thompson alleges that the Florida Bar has violated Rule 3–7.13 by not following its mandated procedures concerning an attorney who is impaired or incompetent, *see* Complaint at ¶ 60, but Rule 3–7.13, by its terms applies only to "incapacity not related to misconduct."

tion, so Mr. Thompson has been denied discovery from the Florida Bar for months. *See id.* at ¶¶ 51, 58.

Referee Tunis, who has refused to recuse herself has also denied subpoenas to Mr. Thompson for discovery, and the Florida Bar has refused to answer requests for admissions and interrogatories, responding that it is up to Mr. Thompson to figure out what he is charged with. Mr. Thompson has not been allowed discovery on his claim of selective prosecution; he has been denied discovery to alleged other, dissimilar, ethics and rules violations by Mr. Cardenas and other lawyers who have filed complaints against him (e.g., the alleged commission of perjury), and by Mr. Kent (the alleged illegal use of drugs). The Florida Bar has refused to respond to discovery requests asking what harm Mr. Thompson has done. Referee Tunis has referred to Mr. Thompson's defensive pleadings as "propaganda," has twice denied Mr. Thompson continuances requested because of his wife's ovarian cancer, and has denied Mr. Thompson hearings on various of his pending motions. *See id.* at ¶¶ 52–54, 68–69.

Mr. Thompson has requested that his "explanations" of what is transpiring in the disciplinary proceedings be transmitted to the Board of Governors. Those requests have been denied. The Florida Supreme Court has also denied Mr. Thompson's petitions for writs of mandamus (which seek Referee Tunis' removal), explaining that Referee Tunis must address Mr. Thompson's motions for recusal in the first instance. *See id.* at ¶¶ 64–67.

### F. Mr. Thompson's Additional "Bad Faith" Evidence

■ In addition to what he has alleged in the complaint, Mr. Thompson has filed numerous documents as further evidence of the Florida Bar's bad faith and harassment. Because evidence outside the four corners of the complaint can be considered when addressing *Younger/Middlesex* abstention, *see, e.g., Stein v. Legal Advertising Committee,* 272 F.Supp.2d at 1260, 1263 n. 3 (D.N.M.2003), I summarize Mr. Thompson's additional submissions, to the extent they are not already covered in the complaint, and will consider them when addressing the exceptions to abstention.[9]

● At some unknown date, Dennis McCauley, the owner and operator of GamePolitics, whose website is *www.gamepolitics.com,* filed a bar complaint against Mr. Thompson. The Florida Bar dismissed this complaint with prejudice.[10]

● The Board of Governors of the Florida Bar has denied Mr. Thompson's request that he be allowed to appear before it to seek dismissal of the disciplinary charges on constitutional and other grounds. On August 29, 2007, Mr. Angones, as President of the Florida Bar, denied Mr. Thompson's request to address the Board of Governors on the pending disciplinary charges.

● Referee Tunis has ruled that Mr. Thompson will not be allowed to present witnesses at his disciplinary trial if he has not disclosed their testimony, even though Mr. Thompson is currently unable to depose officials of the Florida Bar because Ms. Tuma, the prosecutor for the Florida Bar, will not agree to dates for depositions.

---

9. The additional submissions are too numerous to list. In the two and a half months since he filed his third amended complaint, Mr. Thompson has submitted over 100 filings, not including his many motions for recusal. This amounts to over two filings per business day.

10. This may be duplicative of the allegation in ¶ 89 of the complaint, but I list it here just in case it is not.

• Ms. Tuma has filed another complaint against Mr. Thompson with the Florida Bar. This complaint alleges (falsely according to Mr. Thompson) that Mr. Thompson improperly practiced law in Ohio.

• On October 13, 2007, Mr. Thompson filed a complaint with the Florida Bar against Ms. Tuma due to her alleged conduct in the disciplinary proceedings. The Florida Bar subsequently refused to accept Mr. Thompson's complaint as a disciplinary complaint because it was really a matter going to Ms. Tuma's performance in her role as prosecutor for the Florida Bar.

• On October 10, 2007, the Florida Supreme Court denied Mr. Thompson's petitions for writs of mandamus in the disciplinary proceedings.

### G. Mr. Thompson's Claims

The complaint contains three counts. None of the counts specifically identify which defendants are being sued, though Count II states that it is against all defendants.

Count I seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Mr. Thompson specifically requests that Florida Bar Rules 4–8.2(a) and 4–8.4(d) be declared unconstitutional, facially and as applied, under the First Amendment to the Constitution. He also generally requests the same relief as to "all of the Bar Rules being applied against [him]," without specifying what other Florida Bar Rules he is referring to. *See id.* at ¶¶ 91–93.

Count II, brought under 42 U.S.C. §§ 1983 & 1988, seeks injunctive relief against the defendants. Mr. Thompson alleges that the disciplinary proceedings against him are being undertaken in bad faith, and wants those proceedings enjoined (preliminarily and/or permanently). Mr. Thompson also wants injunctive relief granting him the discovery he has been denied. *See id.* at ¶¶ 94–100.

Count III seeks a declaratory judgment that the Florida Bar is a "guild" because it is not acting like a responsible government agency. Although Mr. Thompson himself alleges that the Florida Bar is "an arm of the government of the State of Florida," Complaint at ¶ 2, he nevertheless requests a judicial declaration that the Florida Bar is "not, for all intents and purposes," a state governmental entity, or that if it is, it be ordered to abide by constitutional restraints. *See id.* at ¶¶ 101–119.

### III. *Younger/Middlesex* Abstention

██ Federal courts have an obligation to exercise jurisdiction granted to them by Congress, but there are exceptions to this general rule. One of those exceptions, first enunciated in *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and generally known as *Younger* abstention, requires federal courts not to interfere with ongoing state criminal proceedings if certain criteria are met. *Younger* has been extended to ongoing state civil proceedings, including state bar disciplinary proceedings. Thus, when a plaintiff asks a federal court to enjoin or otherwise affect an ongoing state bar disciplinary proceeding, the federal court must abstain (1) if the proceedings constitute ongoing state judicial proceedings, (2) if the proceedings implicate important state interests, and (3) if there is an opportunity in the state proceedings to raise federal constitutional challenges. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432–37, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). A federal court need not abstain, however, if the plaintiff shows that the proceedings were instituted in bad faith or as harassment, or if there are other "extraordinary circumstances" justifying federal judicial intervention. *See, e.g., id.* at 435, 437, 102 S.Ct. 2515; *Younger,* 401 U.S. at 53, 91 S.Ct. 746. As noted above,

where a federal plaintiff alleges bad faith, harassment, or extraordinary circumstances, a court may consider evidence outside the four corners of the complaint. *See, e.g., Stein,* 272 F.Supp.2d at 1263 n. 3.

■ *Younger/Middlesex* abstention is different than other abstention doctrines in an important way. Where it is applicable, *Younger/Middlesex* abstention does not merely postpone a federal court's adjudication of federal claims. Instead, it requires that the federal action be dismissed: "Unlike those situations where a federal court merely abstains ... *Younger* ... contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

■ This is a proper case for *Younger/Middlesex* abstention. First, Mr. Thompson already made many of the same claims with respect to his disciplinary proceedings in a case he filed against he Florida Bar and others in the Southern District in 2006. In that case, Judge Huck ruled that *Younger/Middlesex* abstention was appropriate. Mr. Thompson did not appeal that ruling, and that ruling is now conclusive as to abstention (at least with respect to the allegations presented in that case). Second, even if Judge Huck's ruling were not conclusive, Mr. Thompson has failed to show bad faith, harassment, or extraordinary circumstances so as to avoid *Younger/Middlesex* abstention.

### A. JUDGE HUCK'S ABSTENTION RULING IN *THOMPSON V. ROGERS*

In October of 2006, Mr. Thompson filed a lawsuit in the Southern District of Florida against the Florida Bar and others, including Mr. Rogers, Mr. Kent, and Beasley Broadcast. *See Thompson v. Rogers et al,* Case No. 06–22477–Civ–Huck. Insofar as the Florida Bar was concerned, Mr. Thompson made many of the same allegations he now repeats here.

In his second amended complaint in *Rogers,* Mr. Thompson alleged that Mr. Kent had filed a SLAPP complaint against him with the Florida Bar on behalf of Mr. Rogers; that the Florida Bar had ordered Mr. Thompson to undergo an examination which revealed that he was not insane and was simply "a lawyer giving voice to his activist Christian faith;" that the Florida Bar's insurer paid him money damages for the Florida Bar's actions; that Beasley Broadcast and its law firm, Tew Cardenas (through Al Cardenas), had filed numerous SLAPP complaints against him with the Florida Bar; that the law firm of Blank Rome—which represented Take Two, the defendant in the action Mr. Thompson filed in Alabama concerning the video game *Grand Theft Auto: Vice City*—had also filed a SLAPP complaint against him with the Florida Bar; that Blank Rome was conspiring with the Florida Bar to have Mr. Thompson disbarred; that the Florida Bar had found all but one of the SLAPP complaints against him to be without merit; that the one remaining SLAPP complaint—the one filed by Blank Rome— was also without merit; that the Florida Bar had, for the last two years, infringed on Mr. Thompson's First Amendment rights and was disciplining him for the exercise of those rights; that the Florida Bar had conspired with the individuals and entities who had filed complaints so as to deny Mr. Thompson his constitutional rights; that the Florida Bar had denied him procedural and substantive due process in the prior and pending disciplinary proceedings; that the Florida Bar had refused to tell Mr. Thompson what it is that he is alleged to have done wrong; that the Florida Bar's designated reviewer in the disciplinary proceedings was Mr. Kuehne, a liberal activist on "behalf of radical gay rights" who could not guarantee the fair-

ness of those proceedings; that the Florida Bar had Med to investigate other alleged criminal behavior and alleged ethical violations by other lawyers; and that the Florida Supreme Court denied his petition for a writ of mandamus arising from the disciplinary proceedings without any valid explanation, as it cited a case that had nothing to do with the relevant issues. Based on these allegations, Mr. Thompson sought injunctive relief in *Rogers*, as well as money damages, against the Florida Bar. He also sought a declaratory judgment that the Florida Bar's actions against him violated Florida's anti-SLAPP statute, Fla. Stat. § 768.295. *See generally Thompson v. Rogers*, Case No. 06–22477–Civ-Huck, Second Amended Complaint [D.E. 54] (December 19, 2006).[11]

In late December of 2006, Judge Huck issued an order granting the Florida Bar's motion to dismiss without prejudice and abstaining pursuant to *Younger* and *Middlesex*. In that order, Judge Huck specifically found that Mr. Thompson's allegations of bad faith, harassment, and/or extraordinary circumstances—based on the Florida Bar's demand that he undergo a psychological examination and failure to investigate the alleged ethical breaches and criminal conduct of other lawyers (i.e. allegations of selective prosecution)—were insufficient to avoid abstention. *See Thompson v. Rogers*, 2006 WL 4056998, *2–*3 (S.D.Fla.2006). Mr. Thompson moved for reconsideration, but that motion was denied in May of 2007. Mr. Thompson did not appeal Judge Huck's order of dismissal. Instead, he filed this action.

Judge Huck's order of dismissal in *Rogers* as to the claims against the Florida Bar was not on the merits. Thus, nothing in that order acts as res judicata or claim preclusion against Mr. Thompson on the merits of those claims. Nevertheless, Judge Huck's rulings that *Younger/Middlesex* abstention was appropriate, and that Mr. Thompson had not established any of the exceptions to abstention, are binding on Mr. Thompson in this case, at least insofar as the allegations in *Rogers* mirror the allegations here. A dismissal on jurisdictional or other non-merit grounds (e.g., venue, personal jurisdiction, forum non-conveniens) still has preclusive effect (at least in the same court) with regard to those bases for dismissal: "Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims." *North Georgia Electric Membership Corp. v. City of Calhoun*, 989 F.2d 429, 433 (11th Cir.1993). *See also Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 572 (5th Cir.1996), *vacated on rehearing en banc*, 101 F.3d 367 (5th Cir.1996) (*en banc*) (affirming decision of district court by equally divided vote); *Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1411 (8th Cir.1983); Restatement (Second) Judgments § 20, comment b & illus. 1.

Thus, *Younger/Middlesex* abstention is appropriate with regard to the allegations in *Rogers* that are repeated in the third amended complaint here. These are the claims about Blank Rome's complaint with the Florida Bar against Mr. Thompson relating to Take Two and the Alabama *Grand Theft Auto* litigation;the Tew

---

**11.** The pleadings in *Rogers* can be judicially noticed under Federal Rule of Evidence 201 for the statements contained therein, though not for the truth of those statements. *See, e.g., Young v. City of Augusta*, 59 F.3d 1160, 1166 n. 1 (11th Cir.1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994); *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987).

Cardenas/Beasley Broadcasting complaints with the Florida Bar against Mr. Thompson; the refusal of the Florida Bar to tell Mr. Thompson what he is being accused of with respect to these complaints, and its purported denial of procedural and substantive due process to Mr. Thompson; the role of Mr. Kuehne as the designated reviewer in the complaints pending against Mr. Thompson with the Florida Bar; the Florida Supreme Court's refusal to grant Mr. Thompson mandamus relief, the Florida Bar's failure to investigate the alleged ethical breaches and criminal conduct of other attorneys; and the Florida Bar's demand that Mr. Thompson undergo another psychological evaluation. As noted earlier, Judge Huck concluded that Mr. Thompson, with respect to these claims, had failed to show bad faith, harassment, or other extraordinary circumstances to avoid *Younger/Middlesex* abstention. *See Rogers*, 2006 WL 4056998, at *3.

**B. ABSTENTION ASIDE FROM JUDGE HUCK'S RULING IN *THOMPSON V. ROGERS***

Putting aside Judge Huck's decision in *Rogers*, and independently looking at Mr. Thompson's third amended complaint, abstention pursuant to *Younger* and *Middlesex* is still warranted.

**1. THE *YOUNGER/MIDDLESEX* CRITERIA**

■ In this case, all of the *Younger/Middlesex* criteria are satisfied. First, under Eleventh Circuit precedent, bar disciplinary proceedings in Florida are judicial in nature. *See In re Calvo*, 88 F.3d 962, 965 (11 th Cir.1996). *See also American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1493 n. 15 (11th Cir. 1993) ("*Younger* applies to bar disciplinary proceedings because they are judicial in nature."). The disciplinary complaints against Mr. Thompson are before Referee Tunis, and trial is set for late November of 2007. The Florida Supreme Court will be able to review Referee Tunis' findings, as well as any discipline she recommends.

Second, the disciplinary proceedings against Mr. Thompson implicate important state interests. In *Middlesex*, the Supreme Court applied *Younger* to pending bar disciplinary proceedings because a state "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex*, 457 U.S. at 434, 102 S.Ct. 2515. More recently, the Supreme Court has reiterated that understanding. *See The Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) ("we have little trouble crediting the [Florida] Bar's interest [in regulating its lawyers] as substantial"). Third, the Florida Supreme Court is able to hear and address any federal constitutional claims asserted by Mr. Thompson in the disciplinary proceedings if those claims have been unsuccessful before the referee, the grievance committee, or the Board of Governors. *See* Fla. Bar R. 3–7.7(a)(1)–(2), (c)(5); *Mason v. The Florida Bar*, 2005 WL 3747383, *5–*6 (M.D.Fla.2005) (magistrate judge's report and recommendation reviewing Florida disciplinary procedures), *adopted by district court*, 2006 WL 305483 (M.D.Fla.2006). It is presumed that "state courts are commonly able to address federal constitutional challenges adequately," *Butler v. Alabama Judicial Inquiry Commission*, 261 F.3d 1154, 1159 (11th Cir. 2001), and Mr. Thompson has not shown that state law bars the presentation of federal claims. The Florida Supreme Court, in tact, has routinely addressed constitutional claims in bar disciplinary proceedings, *see, e.g., The Florida Bar v. Brown*, 905 So.2d 76, 82 (Fla.2005) (addressing federal equal protection challenge to referee's recommendation that attorney be found guilty of misconduct), and there is every indication that Mr. Thompson's claims will be similarly heard. Indeed, the Florida Supreme Court has entertained First Amendment claims similar to Mr.

Thompson's in disciplinary proceedings. *See The Florida Bar v. Ray*, 797 So.2d 556, 558–60 (Fla.2001) (reviewing claim that statements in attorney's letters, which questioned the veracity and integrity of immigration judge, as well as judge's fairness at hearing, were protected speech under the First Amendment). *See also Mason*, 2005 WL 3747383, at *5 ("there is abundant opportunity for a lawyer facing disciplinary charges to raise constitutional issues at almost every stage of the Florida [bar disciplinary] proceedings").

■ Mr. Thompson contends, however, that the Supreme Court's abstention ruling in *Middlesex* does not govern here because the Florida Supreme Court has so far refused to exercise interlocutory jurisdiction (e.g., on his petitions for writs of mandamus to recuse and/or disqualify Referee Tunis), and because the grievance committee and the Board of Governors have failed to accord him an interlocutory hearing or audience on his constitutional claims prior to trial. In my view, Mr. Thompson is mistaken. *Younger/Middlesex* abstention does not depend on an attorney's "right" to obtain interlocutory judicial and/or administrative review on his federal constitutional claims prior to the beginning of the trial in the disciplinary proceedings. All that is necessary is for the state courts to allow an opportunity for the presentation and adjudication of federal constitutional claims, and that opportunity may be made available once the trial stage of the disciplinary proceedings are completed. Mr. Thompson cites no authorities interpreting *Middlesex* as he does, and the cases I have found indicate otherwise. *See, e.g., Fieger v. Thomas*, 74 F.3d 740, 748 (6th Cir.1996) (*Feiger I*) ("The Supreme Court did not say [in Middlesex] that appeal as of right is a condition for *Younger* abstention[.]"). *Cf. Moore v. Sims*, 442 U.S. 415, 430–31, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (fact that plaintiffs were not granted a hearing when they believed they were entitled to one is not enough to justify federal intervention in pending state proceedings).

This case is similar to *Wightman v. Texas Supreme Court*, 84 F.3d 188 (5th Cir. 1996). In *Wightman*, an attorney who was the subject of a bar disciplinary complaint filed a federal action seeking declaratory and injunctive relief, including an injunction stopping the disciplinary proceedings. Like Mr. Thompson, the attorney was accused of violating a rule of professional conduct prohibiting attorneys from "making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." *See id.* at 188–89. As the Fifth Circuit described the allegations, the attorney was charged with making "controversial statements in motions to recuse, letters to the court, and letters to opposing counsel. Many of the statements amounted to venomous character attacks on certain state judges." *Id.* at 189. In his federal action, the attorney alleged and argued (as Mr. Thompson does here) that the state bar authorities (a) failed to provide him with adequate notice of the charges against him, (b) were violating his First *Amendment* right to freedom of speech, and (c) were harassing him. *See id.* at 189 & n. 2. The district court dismissed the attorney's lawsuit on *Younger/Middlesex* abstention grounds, and the attorney appealed to the Fifth Circuit, which affirmed the dismissal. The Fifth Circuit concluded that the attorney had several opportunities to challenge the allegations made against him, and ruled that the attorney had not shown that the state courts could not (or would not) entertain his constitutional challenges. The attorney also had not demonstrated that the state bar authorities were acting in bad faith. *See id.* at 190–91. The Fifth Circuit further held that the attorney could not avoid abstention by mounting a facial

constitutional attack on the rule of professional conduct at issue. Quoting *Younger*, the Fifth Circuit explained that the " 'possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good faith attempts to enforce it,' especially absent 'any showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief.' " *Id.* 191 (quoting *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746).[12]

### 2. THE BAD FAITH/HARASSMENT EXCEPTION TO ABSTENTION

Alternatively, Mr. Thompson argues that abstention is not required because he has demonstrated bad faith, harassment, and extraordinary circumstances—all of which provide exceptions to *Younger/Middlesex* abstention. Mr. Thompson bears the burden on these exceptions, as noted in *Juidice v. Vail*, 430 U.S. 327, 338, 97 S.Ct. 1211, 51 L.Ed.2d 376, (1977), and I conclude that he has not met his burden.

I address bad faith and/or harassment first. Because Mr. Thompson provides many different examples of what he believes establishes bad faith and/or harassment, I discuss these examples in detail. Although a plaintiff who seeks to establish bad faith and/or harassment is sometimes entitled to an evidentiary hearing, *see* *Stewart v. Dameron*, 448 F.2d 396, 397 (5th Cir.1971), no evidentiary hearing is needed here because I am accepting as true the relevant factual allegations made by Mr. Thompson in his complaint and his other filings (with one exception noted below). *See Manculich v. Bucci*, 2006 WL 1085174, *6 (N.D.N.Y. April 25, 2006). *See generally Breedlove v. Moore*, 279 F.3d

952, 960 (11th Cir.2002) ("[N]o evidentiary hearing is necessary where the proffered evidence would not affect the resolution of the claim.") (internal quotation marks and citation omitted).[13]

■ "A prosecution is undertaken in bad faith when '[it] has been brought without a reasonable expectation of obtaining a valid conviction.' " *Redner v. Citrus County*, 919 F.2d 646, 650 (11th Cir.1990) (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975)). Subjective motivation, the Second Circuit has said, is central to, if not determinative, of this inquiry. *See Diamond D Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2nd Cir.2002) (citing *Kugler*, 421 U.S. at 125, 95 S.Ct. 1524). The question here, then, is whether the Florida Bar, at the time it instituted the disciplinary proceedings against Mr. Thompson, "was driven by a retaliatory motive or by some other nefarious purpose." *id.* at 200. *See also Carbone v. Zollar*, 845 F.Supp. 534, 538 (N.D.Ill.1993) ("plaintiffs' claims of bad faith must be supported with specific allegations form which we may infer that defendants knowingly instituted meritless prosecutions against the denturists and frivolous disciplinary proceedings against the dentists solely to discourage the exercise of protected rights"). The answer to that question is no. The Florida Bar was faced with complaints made by third parties—judges and lawyers—which alleged, in part, that Mr. Thompson had made false statements about them, and was required to investigate those complaints. *See Kern v. Clark*, 2004 WL 941418, *4 (W.D.N.Y. 2004). Mr. Thompson alleges that he has

---

**12.** For another case in which a federal court applied *Younger/Middlesex* abstention to a lawsuit by an attorney accused of making disparaging remarks about state prosecutors, judges, justices, and the judiciary in general, see *Fieger I*, 74 F.3d at 744–49.

**13.** The one exception is Mr. Thompson's general allegation that he has not been given notice of the charges against him. I do not accept that general allegation because other, more specific allegations in the complaint show that Mr. Thompson has been advised of and is aware of the charges against him.

now presented evidence to the Florida Bar that some or all of the charges are baseless (e.g., the charge that he did not disclose his Florida disciplinary history in the Alabama case), and he contends that the statements he made about Judges Moore and Friedman were in fact true. That may be, but an attorney involved in disciplinary proceedings cannot avoid *Younger/Middlesex* abstention by the simple expedient of maintaining (under oath or not) that the disciplinary charges against him lack merit. *See Crenshaw v. Supreme Court of Indiana,* 170 F.3d 725, 729 (7th Cir.1999) (attorney facing investigation could not show bad faith by alleging that investigation was retaliation for her publicly documented (and truthful) allegations of impropriety in the Indiana courts). The Florida Supreme Court has held that summary judgment is available in bar disciplinary proceedings, *see The Florida Bar v. Daniel,* 626 So.2d 178, 182 (Fla.1993), and Mr. Thompson is free to file such a motion before Referee Tunis if he believes that the undisputed facts entitle him to dismissal of the charges prior to trial as a matter of law.

In an effort to establish bad faith, Mr. Thompson also generally alleges that he has not given notice of the charges against him. He claims that the Florida Bar has not informed him of the statements which purportedly violate Florida Bar Rules, or how they violate the Florida Bar Rules. Mr. Thompson, unfortunately, has not attached the pending disciplinary complaints to his third amended complaint. Nor has he quoted in that complaint the portions of the disciplinary complaints which purportedly do not give him adequate notice. So I am left with general allegations of lack of notice in Mr. Thompson's complaint. These general allegations, in my view, need not be accepted as true because they are contradicted by more specific allegations in the complaint. *See generally Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189,

1205–06 (11th Cir.2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *Hirsch v. Arthur Andersen and Co.,* 72 F.3d 1085, 1092 (2nd Cir.1995) ("General, conclusory allegations need not be credited … when they are belied by more specific allegations of the complaint."). Mr. Thompson's complaint makes clear that he has been apprised of the statements that give rise to the disciplinary complaints. For example, Mr. Thompson alleges that, in the complaints filed by Blank Rome and Judge Moore, he has been accused of (a) not disclosing his Florida disciplinary history in a *pro hac vice* application, and (b) of falsely stating that a lawyer told him that he could fix a murder case before Judge Moore. *See* Complaint at ¶¶ 31–32. Mr. Thompson also alleges that, in the complaint filed by Judge Friedman, he has been accused of making untruthful statements about Judge Friedman's behavior and conduct in the nuisance action that Mr. Thompson brought against Take Two for its marketing of the violent *Bully* video game. *See id.* at ¶¶ 38–39. Mr. Thompson, of course, maintains that his statements about Judge Moore and Judge Friedman were truthful, but that, for present purposes, is not the issue. The point is that Mr. Thompson is on notice of what he is alleged to have done wrong.

Mr. Thompson has further alleged that Judge Moore and Judge Friedman failed to file their complaints against him under oath, as required by Florida Bar Rule 3–7.3(c). Those allegations, which I must and do accept as true, point to procedural irregularities in the disciplinary proceedings. But they are not enough for Mr. Thompson to show bad faith and/or harassment and avoid abstention. By Mr. Thompson's own admission, Judge Moore has now been deposed under oath, so any

accusations he made against Mr. Thompson have now been verified. *See* Complaint at ¶ 33. And at the last hearing, Mr. Thompson acknowledged that he had chosen, for tactical reasons, not to depose Judge Friedman, so he has foregone his opportunity to have Judge Friedman confirm his accusations under oath. *See Berger v. Cuyahoga County Bar Ass'n*, 775 F.Supp. 1096, 1100 (N.D.Ohio 1991) ("The Bar Association's failure to conduct itself in an ideal manner, while regrettable, does not overcome the strong policies of *Younger* abstention.").

Mr. Thompson also points to the opinion of the Florida Bar's outside investigator, Mr. Pollack, that the complaints filed by Mr. Kent (on behalf of the *Howard Stern Show*) were baseless. He argues that this shows bad faith because Mr. Pollack's opinion was overridden by Mr. Kuehne (the allegedly biased designated reviewer), who persuaded the grievance committee to find probable cause. This argument also fails, because Mr. Thompson admits that the Florida Bar did dismiss Mr. Kent's complaints (though it was a year too late in his view). *See* Complaint at ¶ 25. Again, the Florida Bar rejected complaints filed against Mr. Thompson when it found them without basis. The proceedings involving Mr. Kent's complaints may have lasted longer than Mr. Thompson would have liked, but that delay does not establish bad faith and/or harassment.[14] To the extent that Mr. Thompson is complaining about the participation of Mr. Kuehne (who recused himself after being the designated reviewer for a long time) and Mr. Chaykin (the current designated reviewer)—individuals whose views on various social and moral issues differ markedly from Mr.

Thompson—those complaints of bias are insufficient. *Cf. Mason v. Departmental Disciplinary Committee*, 894 F.2d 512, 515 (2nd Cir.1990) ("Nor is bias shown by the allegations concerning the resignation of Gentile [the chief counsel of the disciplinary committee], the role of Justice Murphy in such resignation, or any state inquiry into such matters. It is wholly speculative for Mason to conclude that the members of the [disciplinary] committee or its current staff have prejudged him, or are incapable of impartially deciding whether to initiate formal proceedings and, in that event, of conducting them fairly. Finally, no sufficient claim of bias is shown by the fact that the committee has rejected Mason's claim of bias, nor by the state courts' refusal to halt the committee's efforts to ascertain whether grounds exist for formal charges.").

According to Mr. Thompson, the Florida Bar's demand that he submit to a psychological examination, even though he was found mentally fit 15 years ago and has now secured a forensic examination by a respected doctor showing that there are no concerns about his mental capacity to practice law, also shows bad faith. This too, however, is insufficient. Mr. Thompson may believe that the Florida Bar should not have him evaluated while at the same time asking him to plead guilty to the charges made against him, but the litigation position of the Florida Bar at most shows unreasonableness.

■ Another arrow in Mr. Thompson's bad faith/harassment quiver is his claim of selective prosecution. Generally, claims of selective prosecution are insufficient to show bad faith and/or harassment. *See*

---

**14.** To the extent that Mr. Thompson generally asserts in his response that the complaints filed by Mr. Kent are still pending, *see* Plaintiff's Response to Bar Defendants' Motion to Dismiss [D.E. 120] at 8–9, that contention contradicts the allegations in the complaint. Under Rule 12(b)(6), I accept the facts as pled in the complaint, and not as stated in an unverified response to a motion.

*Fieger I*, 74 F.3d at 748; *Pincham v. Illinois Judicial Inquiry Bd.*, 872 F.2d 1341, 1349–50 (7th Cir.1989); *Thompson*, 2006 WL 4056998, at *3; *Carbone*, 845 F.Supp. at 538; *Berger*, 775 F.Supp. at 1100. But assuming that selective prosecution can provide a basis for avoiding abstention under *Younger/Middlesex*, Mr. Thompson has not alleged selective prosecution in violation of federal law. In the context of this case, a claim of selective prosecution requires a litigant like Mr. Thompson to allege that similarly situated individuals were treated differently based on the content of their speech. "[A] 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means the same basic [disciplinary violation] in substantially the same manner as [Mr. Thompson]—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the [Florida Bar's] enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against [Mr. Thompson]." *United States v. Smith*, 231 F.3d 800, 810 (11th Cir.2000) (brackets and content inside brackets substituted for original language). Mr. Thompson has failed to allege that the Florida Bar has failed to process or initiate disciplinary complaints against other attorneys for alleged false statements about judges based upon the political, moral, religious, or legal views of those attorneys. Mr. Thompson has, in other words, not alleged that he has been treated differently from others similarly situated based on his views. Mr. Thompson does allege that the Florida Bar has failed to go after other attorneys who have allegedly committed offenses like perjury, use of narcotics, and pornography, and that allegation, taken as true at this stage of the litigation, suggests that the Florida Bar may not have its enforcement priorities quite right. But it fells far short of

showing selective prosecution so as to avoid *Younger/Middlesex* abstention.

For the same reason, Mr. Thompson's allegation that he has been denied discovery on selective prosecution fails to show bad faith and/or harassment. On this record, it appears that Mr. Thompson is not constitutionally entitled to the selective prosecution discovery that he seeks. *See United States v. Bass*, 536 U.S. 862, 864, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002) (per curiam) ("Under *Armstrong*, therefore, because respondent failed to submit relevant evidence that similarly situated persons were treated differently, he was not entitled to discovery."). The refusal of Referee Tunis and the Florida Bar to provide Mr. Thompson with such discovery therefore does not show bad faith and/or harassment.

■ Along the same lines, Mr. Thompson alleges that he has been denied "nearly all discovery" in the disciplinary proceedings. *See* Complaint at ¶ 52. But it is important to note that litigants in administrative disciplinary proceedings are not entitled, as a matter of federal due process, to broad discovery. A lawyer in a disbarment/disciplinary proceeding is entitled to fair notice of the charge and an opportunity to be heard. *See, e.g., In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *In re Fletcher*, 424 F.3d 783 792 (8th Cir.2005). He is not, however, entitled to all of the constitutional protections provided to defendants in criminal prosecutions. *See, e.g., Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir.2000) ("It is well settled in this Circuit that while in disbarment proceedings, due process requires notice and an opportunity to be heard, rarely will more be required."); *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir.2000) (" '[A]n attorney subject to discipline is entitled to

procedural due process, including notice and an opportunity to be heard.' However, an opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to brief the issue fully satisfies due process requirements.") (internal citations omitted). *Accord Charges of Unprofessional Conduct v. Stuart*, 249 F.3d 821, 825 (8th Cir.2001); *In re Ming*, 469 F.2d 1352, 1355 (7th Cir. 1972). Accordingly, federal courts have rejected due process challenges to the denials of broad, vague, and unnecessary discovery requests by lawyers involved in disbarment/disciplinary proceedings. *See, e.g., Fletcher*, 424 F.3d at 794–95. Here Mr. Thompson has been able to depose Judge Moore—one of the complainants, *see* Complaint at ¶ 33—and by his own admission at the last hearing has tactically chosen not to depose Judge Friedman—another of the complainants. Mr. Thompson, in short, has been given the opportunity to confront and question his accusers. Referee Tunis' discovery rulings, even if an abuse of discretion, do not establish bad faith and/or harassment. *See, e.g., Squire v. Coughlan*, 469 F.3d 551, 558 (6th Cir. 2006) (judge facing state disciplinary proceeding relating to alleged misconduct could not avoid *Younger/Middlesex* abstention by claiming that disciplinary counsel violated her due process rights by not providing her with the name of every person contacted in course of investigation into alleged misconduct).

### 3. THE "EXTRAORDINARY CIRCUMSTANCES" EXCEPTION TO ABSTENTION

Next, I turn to the "extraordinary circumstances" exception, which exists only in very limited scenarios. One is where the statute or rule on which the disciplinary proceedings are based is unconstitu-

tional in *every* application, i.e., where the statute or rule is "fragrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whom an effort might be made to apply it." *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746. *See Moore*, 442 U.S. at 429–30, 99 S.Ct. 2371 (the fact that a constitutional attack is broad and facial does not undermine the policies supporting abstention). Another is where the administrative agency is incompetent by reason of bias to adjudicate the issues before it. *See, e.g., Gibson*, 411 U.S. at 563, 574, 578–79, 93 S.Ct. 1689 (board of optometry biased because it was composed of optometrists in individual private practice, and a revocation of licenses of optometrists who associated with business corporations would possibly redound to the personal benefit of the members of the board: "those with substantial pecuniary interest in legal proceedings should not adjudicate those disputes"). *See also Kugler*, 421 U.S. at 125, 95 S.Ct. 1524 ("such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation").

There are no extraordinary circumstances here. First, although attorneys like Mr. Thompson have a First Amendment right to criticize judges, disciplinary rules like Florida Bar Rule 4–8.2(a) [15] can be constitutionally applied to false statements about judges made with knowledge of falsity or with reckless disregard for their truth. *See, e.g., In re Palmisano*, 70 F.3d 483, 487–88 (7th Cir. 1995); *In re Landrith*, 280 Kan. 619, 124 P.3d 467, 478–81 (2005); *Welsh v. Moun-*

---

**15.** In relevant part, Rule 4–8.2(a) provides that a "lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge[.]"

*ger,* 912 So.2d 823, 826–28 (Miss.2005); *Burton v. Statewide Grievance Committee,* 830 A.2d 1205, 1211 (Conn.Super.2002); *Ray,* 797 So.2d at 558–60. Similarly, Florida Bar Rule 4–8.4(d)[16] and rules like it have been held to not be overbroad or vague, and have been upheld as applied in a variety of circumstances. *See, e.g., Howell v. State Bar of Texas,* 843 F.2d 205, 208 (5th Cir.1988); *In re Comfort,* 284 Kan. 183, 159 P.3d 1011, 1023–27 (2007); *The Florida Bar v. Von Zamft,* 814 So.2d 385, 388 n. 1 (Fla.2002); *Committee on Legal Ethics of West Virginia Bar v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325, 328–32 (1988). This, therefore, is not the type of case contemplated by *Younger* where the rules allegedly violated cannot be enforced under *any* circumstances.

The case cited by Mr. Thompson, *Fieger v. Michigan Supreme Court,* 2007 WL 2571975, *7–*12 (E.D.Mich.2007) (*Fieger II* ), misses the mark, for the two Michigan disciplinary rules struck down in that case are broader than Florida Bar Rules 4–8.2(a) and 4–8.4(d). Michigan Rule of Professional Conduct 6.–5(a) requires attorneys to treat all persons with "courtesy" and "respect," while Rule 3.5(c) prohibits "undignified or discourteous conduct toward the tribunal." Furthermore, the court in *Fieger II* specifically recognized that false statements by attorneys can be the subject of discipline if they are made with knowledge of falsity or reckless disregard for their truth. *See id.* at *8 (quoting *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). *Fieger II,* therefore, does not support Mr. Thompson's argument.

## IV. CONCLUSION

Under *Younger/Middlesex* abstention principles, Mr. Thompson's verified third amended complaint is dismissed without prejudice. All pending motions are denied as moot, and this case is closed.

DONE and ORDERED in chambers in Miami, Florida, this 20th day of November, 2007.

## ORDER DENYING MOTION FOR RECONSIDERATION

Mr. Thompson's motion for reconsideration [D.E. 354] is DENIED. Mr. Thompson contends that *Younger/Middlesex* abstention does not apply to a claim for a declaratory judgment, and asserts that I erred by not considering his declaratory judgment claim on the merits. Mr. Thompson's initial premise, however, is simply mistaken. The Supreme Court expressly extended *Younger* abstention to claims for declaratory relief in *Samuels v. Mackell,* 401 U.S. 66, 69–72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Because Mr. Thompson's constitutional challenges to certain Florida Bar rules are intertwined with the ongoing state disciplinary proceedings, and because Mr. Thompson has the ability to raise his constitutional challenges before Referee Tunis and before the Florida Supreme Court (if he does not prevail before Referee Tunis), abstention is appropriate as to his request for a declaratory judgment.

This order is being issued after 6:00 p.m. on Wednesday, November 21, 2007, and will be sent by email to the parties this evening. Given the Thanksgiving holiday, however, the order will probably not appear on the docket sheet until Monday, November 26, 2007.

DONE and ORDERED in chambers in Miami, Florida, this 21st day of November, 2007.

---

**16.** In relevant part, Rule 4–8.4(d) provides that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice[.]"